Marshall, C. J.
 

 This cause involves the interpretation of the Freeman-Collister Motor Transportation Act, hut is not a review of any order of the Public Utilities Commission. The cause originated in the court of common pleas of Summit county, Ohio, at the suit of Hissem, operating a motor transportation company under a certificate of public convenience issued by the Public Utilities Commission, granting’ him the exclusive right to conduct and operate his business as a motor transportation company over a regular route between fixed termini in Summit county, Ohio, seeking to enjoin Curan and Myers from operating a motor truck over the same route, without first obtaining a certificate of authority from the Public Utilities Commission.
 

 The record discloses that Hissem was engaged in hauling milk to the city of Akron, for certain producers, and that Curan and Myers were also engaged in hauling milk from certain other producers located in the same community to the same market in the city of Akron. The trucks of both parties cover practically the same route; each rendering the same service, though for different employers. Curan and Myers were operating under a contract of employment with a branch of the Summit County Milk Producers Association, whereby they were employed for hire to collect
 
 *61
 
 and transport milk and cream of the members of the said association, and no one else, to the White Bock Dairy Company of Akron, and no other person, upon a regular schedule of prices, depending upon the distance and the character of the highways covered. The Summit County Milk Producers Association, the employer of Curan and Myers, is a co-operative marketing association organized in accordance with Ohio laws (109 O. L., 50). Guran and Myers do not serve the public generally, or any person or firm other than members of the association, in accordance with the contract. They do not hold themselves ready to carry for all persons, indifferently, who may choose to employ them, neither have they ever accepted any public franchise or called the police powers of the state to their aid.
 

 Upon these facts the Court of Common Pleas refused to enjoin, and upon error being prosecuted to the Court of Appeals that court affirmed the judgment. Upon error prosecuted to this court we are asked to construe and apply the provisions of the Freeman-Collister Act (110 Ohio Laws, 211, 223). .
 

 Section 614-2, General Code (110 O. L., 212) provides:
 

 “Any person, or persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated: * * * When engaged in the business of carrying and transporting persons or property or both, in motor propelled vehicles of any kind whatsoever, for hire, over any public street, road or highway in this state
 
 *62
 
 except as hereinafter provided in Section 614-84, is a motor transportation company and as such is declared to be a common carrier.”
 

 Section 614-84, subdivision c, defines, a motor transportation company:
 

 “The term ‘motor transportation company,’ when used in this chapter, means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transportation of persons or property or both, as a common carrier for compensation, over any public highway in this state.”
 

 The term, “motor transportation company,” is first used in Section 614-2, and if we insert the definition of the term and write it into that section in the place of the term itself it will be found that the General Assembly has attempted by legislative fiat to constitute the person or company who may do the things therein referred to a common carrier. In this controversy this court is required to determine the limitations upon the power and authority of the General Assembly to declare certain persons and firms to be common carriers, when the business conducted by them is such as not to bring them within the common-law definition of common carriers. By Section 614-2 it is declared that any transportation for hire of persons or property in motor-propelled vehicles over the streets and highways of the state constitutes the operators of the vehicles common carriers. If common carriers, they are of course sub
 
 *63
 
 jeot to regulation both as to the rates to be charged and the service to be rendered. They are subject also to taxes and charges, and involved in expenses which do not have to be met by persons and firms not subject to public regulation. If they are common carriers their vehicles and other property are devoted to public use, and they cannot complain of public regulation, with the taxes, charges, expenses, and other inconveniences incident thereto. If their business has not in fact been dedicated to public use and service, any regulation would amount to a taking of private property for public use, and therefore be beyond the power of the state, unless just compensation were first paid in money.
 

 As to what constitutes a common carrier, there can be no real controversy. It has been determined by numerous decisions of this court and the United States Supreme Court, and, for that matter, by the courts in practically every state in the Union.
 
 Samms
 
 v.
 
 Stewart & McKibben,
 
 20 Ohio, 70, 55 Am. Dec., 445;
 
 United States Express Co.
 
 v.
 
 Bachman,
 
 28 Ohio St., 144;
 
 Ohio Mining Co.
 
 v.
 
 Public Utilities Commission,
 
 106 Ohio St., 138, 140 N. E., 143;
 
 Korner
 
 v.
 
 Cosgrove,
 
 108 Ohio St., 484, 141 N. E., 267, 31 A. L. R., 1193;
 
 Southern Ohio Power Co.
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 246, 143 N. E., 700.
 

 The declarations of the foregoing cases are in perfect harmony with all other decisions throughout the states of the Union, and of the United States Supreme Court, in declaring that to constitute a common carrier there must be a dedication of property to public use of such character that
 
 *64
 
 the product and service are available to the public generally and indiscriminately, and that the carrier must hold himself ready to serve the public indifferently to the limit of his capacity. The authorities are equally uniform in holding that, if a carrier is employed by one or a definite number of persons by a special contract, or for a special undertaking, he is only a private carrier. In the instant case it is true that Guran and Myers are performing services for other persons, for which they are receiving a compensation, and it is also true that they are using the improved highways of the state ini and about the performance of that service. Neither of these features is conclusive of the question. The entire service rendered by them is pursuant to a private contract, in which no one else is interested, and no benefit or disadvantage accrues to any other person by reason of the rendition of that service, except that Hissem might possibly enjoy a larger patronage if the injunction against Guran and Myers should become effective. It does not conclusively follow that this would happen, because each of the producers might transport his own individual product to the market in his own vehicle. The use of the highways by Guran and Myers is not conclusive of the question, because it cannot be said that traversing the highways by a single truck, serving a large number of patrons, is more destructive to the highways than the' transportation of the same product to the same market by the use of a large number of vehicles of individual owners. There does not therefore, upon principle, appear to be any sound basis for the exercise of public regulation of motor vehicles not dedicated to public use.
 

 
 *65
 
 This question is not a new one, but, on the contrary, has been met by many courts. The Supreme Court of California, in
 
 Allen
 
 v.
 
 Railroad Comm.,
 
 179 Cal., 68, 175 P., 466, 8 A. L. R., 249, in a very clear opinion, denies the right of -the Legislature to constitute a private carrier a public and common carrier by legislative fiat, ‘as being-in contravention of Section 10, Article 1, and of the Fourteenth Amendment, of the federal Constitution. Aside from the logic of the opinion in that ease, it beeoines a very cogent authority by reason of an application having beea made to the Supreme Court of the United States for a writ of
 
 certiorari,
 
 which writ Was dehed.
 
 Railroad Comm.
 
 v.
 
 Allen,
 
 249 U. S., 601, 39 S. Ct., 259, 63 L. Ed., 797. Since the denial of tie writ in that casé, the Supreme Court of the United States has squarely met this question, aid has decided against the authority of a state Legislature to convert a private carrier into a pblic utility by mere legislative fiat.
 
 Producers’ Transportation Co.
 
 v.
 
 Railroad Comm, of California
 
 251 U. S., 228, 230, 231, 40 S. Ct., 131, 64 L. Ed., 29;
 
 Wolff Packing Co.
 
 v.
 
 Court of Industrial Relalons,
 
 262 U. S., 522, 536, 43 S. Ct., 630, 67 L. Ed. 1103, 27 A. L. R., 1280;
 
 Michigan Public Utilities Comm.
 
 v.
 
 Duke, d. b. a. Duke Cartage Co.,
 
 266 U. S., 570, 45 S. Ct., 191, 69 L. Ed., 207, decided by the Supreme Court of the United States January 12, 125. The Michigan statute construed in that caséis quite similar to Section 614-2, General Code, ad its pertinent provisions are as follows:
 

 “Any and all persons * * * mgaged
 
 * *
 
 * in the transportation of persons >r property for
 
 *66
 
 hire by motor vehicle upon or over the public highways of this state * * * shall be common carriers, and, so far as applicable, all laws of this state now in force or hereafter enacted, regulating * * * transportation
 
 * * *
 
 by other common carriers, including regulation of rates,’ shall apply with equal force and effect to such common carriers * * * by motor vehicles * * Pub. Acts 1923 (Mich.) No. 209, Section 3.
 

 The business of Duke, which the Commission sought to reguate in that case, was that of hauling motor trucks aid trailers over the public highways of Michigan from Detroit to Toledo. He had no other busiiess, and did not hold himself out as a carrier fir the public. He had three contracts with tlree manufacturers of automobile bodies in Detnit to transport their product to an automobile manufacturer in Toledo. It was held by the Súmeme Court of the United States that the provisins of the act above quoted could not be enforces against him. Duke ivas further declared to be
 
 t
 
 private carrier, having no powers of eminent domin, exercising no franchise under the state, and pssessing no greater right to use the highways thn any other member of the public.
 

 For the foreping reasons, and upon the foregoing authority, any interpretation of Section 614-2 which woid give state agencies any authority to regulate lotor-propelled vehicles employed only in private srvice .would constitute a violation of Section 10, .rticle I, and of the Fourteenth Amendment, of le federal Constitution.
 

 Section '614-2, eing a part of a general scheme
 
 *67
 
 of legislation to regulate motor-vehicle transportation, and essential to the other provisions of the Freeman-Oollister Act, this controversy can be disposed of by an interpretation of that section whereby it will be made to apply only to motor-vehicle transportation which comes within the purview of the common-law definition of common carriers.
 

 This case cannot be disposed of without some reference to the following provisions of Section 614-88, General Code:
 

 “Except as provided in Section 614-84, no corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall operate any automobile, jitney, bus, track, stage, auto stage, or rent for hire car for the transportation of persons or property or both, for compensation, over any public street, road or highway in this state between fixed termini or over a regular or irregular route, over which any motor transportation company is operating under a certificate of convenience and necessity issued by the commission as provided in this act, until such corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, shall have secured a, certificate of public convenience and necessity or permission from the commission to so operate, and then only in strict accordance with such rules as the commission may prescribe for such operation.”
 

 That section performs a very useful function, and is quite necessary to be employed in giving complete protection to motor transportation companies which have been furnished certificates of
 
 *68
 
 convenience and necessity against the aggressions of other motor transportation companies which are in fact common carriers, and that section should be employed by the Public Utilities Commission in a proper case. The Commission may not, however, employ the provisions' of that section as an instrument of oppression against a private carrier, even though the business, operated by the private carrier might prove to be ruinous to a public carrier operating over the' same routes and between the same termini, even though he has made full compliance with all the requirements of the act, and even though he may have been subject to all of the charges, taxes, and expenses incident to regulation at the hands of the Public Utilities Commission. The judgment of the Court of Appeals and of the common pleas will therefore be affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.