Marshall, C. J.
 

 Elmer E. Brener lives in Cleveland, Ohio, and prior to 1925 was engaged in trucking in that city. In 1925 he was employed by a trucking company at Warren, Ohio, and severed that
 
 *96
 
 connection in August, 1926. He then began trucking on his own account, and, while the record is not entirely clear upon the point, it will be assumed in the decision of this cause that in all instances he served only patrons who entered into a contract with him. He printed and distributed a telephone card as follows:
 

 “Trucks for All Purposes — Trucking—Elmer C. Brener Contract Local and Long Distance Trucking — 5952 Engle Avenue, Elm Street, Warren, Ohio.”
 

 He also employed a solicitor to secure business for him. In 1927 he applied for, and received, an irregular interstate license on one truck, but never used that license. At the time this proceeding was instituted he owned, and was operating, at least four tracks. Under instruction of one of the inspectors of the Public Utilities Commission he painted on his automobile trucks the following letters.
 

 “P. U. C. O. License No. 2621.”
 

 The testimony before the commission further developed that he would haul for any one who would sign a contract, and that he held himself out to serve the public indifferently, his only condition being that their credit standing was to be satisfactory.
 

 The contract which Breuer required his patrons to sign was by its terms stated to be a private contract of carriage. He agreed to hold himself in readiness to transport, merchandise for any patron who would sign such contract, and to render prompt and efficient service upon payment of a compensa
 
 *97
 
 tion, which was stated to be a certain price per hundred weight. The contract further provided that the patron should pay the compensation on the first day of each month after the rendition of the service. The contract lacked mutuality, inasmuch as the patron did not agree to do anything except to pay the compensation on the first day of each month for the service rendered during the preceding month. The patron was, however, left free to either furnish merchandise for transportation or omit to do so.
 

 The proceeding before the commission was to determine whether or not Breuer was-a public carrier, and therefore subject to license as such, and to the requirement to pay taxes and carry insurance, and other requirements of the Motor Transportation Act. It is insisted by counsel for Breuer that, upon the authority of
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, 146 N. E., 808, he is a private contract carrier. If he should be held to be a private contract carrier, then, by the provisions of Section 614-84, General Code, he is exempted from regulation under the Motor Transportation Act. Section 614-2, General Code, attempts to define a private contract carrier, but that section has no value as a definition, because its purport is that a person transporting persons or property under private contract, but not as a common carrier, is a private contract carrier. It was held in
 
 Hissem
 
 v.
 
 Guran
 
 that a person transporting merchandise in motor vehicles under a definite employment for certain employers in a certain industry, where no merchandise was carried for any one other than such regular employers,, did not constitute such person a common carrier. That case is essentially different from the one at bar. The in
 
 *98
 
 stant case comes more clearly within the description of
 
 Craig
 
 v.
 
 Public Utilities Commission of Ohio,
 
 115 Ohio St., 512, 154 N. E., 795. In that case an owner of trucks used them partly in his own business and partly in hauling for others for hire. He admitted that he carried for other persons indiscriminately to the extent of his ability and to the limit of his capacity.
 

 Counsel for Breuer stresses the fact that in each instance a contract was signed, and that he (Breuer) would not carry for any one who did not sign the contract. The mere fact that a contract was signed in each instance is not controlling or even important. Neither does the fact that the contract lacked mutuality have controlling importance. Breuer admitted that he would execute a contract with any one who had merchandise to be transported, and that it was only a question of the patron agreeing to his terms, and the patron being a responsible person. Obviously it was necessary that the patron be a responsible person, because he did not collect in advance; neither did he collect upon delivery of the merchandise. The merchandise would be carried and delivered and collection made on the first day of the following month. It is not unusual for common carriers generally to extend credit to responsible patrons and to freely carry and deliver merchandise and make collections at a later date. Breuer’s method of doing business, therefore, has no characteristics to distinguish it from the methods of carriers generally. The decisive feature of the case is, as admitted by him, that he would enter into a contract with any responsible person for a single transaction to the limit of the capacity of his equip
 
 *99
 
 ment. This comes clearly within the definition laid down by all the authorities, many of which were cited in
 
 Hissem
 
 v.
 
 Guran, supra.
 
 The commission having found that he was a common carrier, and therefore subject to regulation, its order must be affirmed.
 

 Order affirmed.
 

 Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur. / ,