Marshall, C. J.
 

 The issues involved in this error proceeding raise mixed questions of law and fact and require this court to judicially review the evidence to determine whether the findings of fact of the commission are reasonable and lawful, and also whether legal principles governing the same have been properly applied.
 

 In the last analysis the question for determination is whether Motor Freight, Inc., so conducts its business as to constitute it a common carrier, and whether it is a motor transportation company, as defined by Section 614-84, General Code of Ohio. That section provides, in part, as follows:
 

 “The term ‘motor transportation company,’ when used in this chapter, means every corporation, company, association, joint stock association, person, firm or copartnership, their lessees, trustees, receivers or trustees appointed by any court whatso
 
 *7
 
 ever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails, used in the business of transportation of persons or property, or both, as a common carrier, for hire, under private contract or for the public in general, over any public highway in this state; provided, however, that the term ‘motor transportation company’ as used in this chapter shall not include any private contract carrier, as defined in Section 614-2 * *
 

 This statute and Section 614-2, General Code, were under interpretation, and were discussed at length in
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, 146 N. E., 808, and the general principles of law applicable to this controversy were considered and decided in that case and need not be repeated here. The facts of that case differ from the facts in the instant case, in that Iiissem had certain fixed patronage, and served no other patrons, while Motor Freight, Inc., has a limited number of patrons, but is willing to serve others within well-defined limitations as to the character and volume of the merchandise to be transported and the character of service to be rendered. The cases differ also in the fact that Hissem owned and operated the trucks, while Motor Freight, Inc., neither owns nor operates any motor-propelled vehicles. Reaffirming the doctrine of the
 
 jEissem case
 
 and its interpretation of the statutory definitions of a motor transportation company, it must be held that, unless Motor Freight, Inc., is a common carrier of freight, within the common-law definition of that term, it is not subject to regulation by the Public Utilities Commission. Following the reasoning of the
 
 Hissem case,
 
 Motor Freight, Inc.,
 
 *8
 
 cannot be held to' be a common carrier, because it does not hold itself out to the public as willing to carry property for all persons indiscriminately to the limit of its capacity. Its service is limited to certain classes of persons, certain classes of freight, and service of a certain kind and character.
 

 The volume of business transacted by Motor Freight, Inc., and the facts that it comes in direct competition with those who are rendering transportation service as common carriers, and that it is free from the duties, obligations, taxes, insurance, and other charges imposed upon common carriers, and that the freight, transportation of which is provided by it, is in fact transported over the highways of the state, all militate strongly in favor of subjecting the company to public regulation as a common carrier. If, on the other hand, its business is so conducted as to create only private contract relations between it and its patrons, in which no detriment accrues to the general public, or, in other words, if its business is conducted in such manner as not to bring it within the purview of the common-law definition of a common carrier, it is beyond the reach of governmental agencies seeking to regulate it. Public regulation exercised over a common carrier of freight and passengers affords a measure of protection to those who deal with such carriers, but if those who have freight to be transported prefer to patronize those who are not regulated, and if they are willing to assume the risks which might be avoided by patronizing common carriers, it is no concern of the state. One of the arguments employed in this case is that the highways of the state should not .be utilized for the transportation of a
 
 *9
 
 large volume of freight without the charges which would help to build and maintain the highways. We have not considered and do not decide whether the individual truck owners are subject to regulation, leaving that subject for consideration and decision when such truck owners shall be proper parties before the court and where the issues will be properly made.
 

 While counsel for the commission do not criticise the principle declared in the
 
 Hissem, case,
 
 it is argued that
 
 Breuer
 
 v.
 
 Pub. Util. Comm.,
 
 118 Ohio St., 95, 160 N. E., 623, is more nearly parallel. That ease was decided upon facts essentially different from the instant case. Without detailing the facts recited at page 96 of the opinion, it is sufficient to say that Breuer was the owner of the trucks and operated them upon the highways, that he employed a solicitor, and that he held himself out to the public as being willing to serve the public indifferently to the limit of the capacity of the trucks owned and operated by him. The instant case is also distinguishable from
 
 Craig
 
 v.
 
 Pub. Util. Comm.,
 
 115 Ohio St., 512, 154 N. E., 795, where the truck owner was held to be a common carrier, though his trucks were used partly in his own business; all other facts bringing him within the definition of a common carrier.
 

 One of the most potent reasons for the conclusions we have reached in this case is found in the fact that Motor Freight, Inc., does not own any of the motor vehicles employed in the transportation. There is therefore no property which is dedicated to public use. It is difficult to see how the commission would proceed to enforce its order.
 
 *10
 
 Ordinarily the commission prescribes the equipment to be used, and exercises a measure of supervision over rates and service. Taxes, charges, and insurance have definite relations to the equipment employed. It is difficult to see how these regulations could be applied or made effective. One of the first orders the commission would have to make would be to require the respondent to acquire title to the equipment, and we know of no principle of common law, or provision of statute law, which would authorize such an order. In the findings of the commission under review in this proceeding, it is stated that the truck owners are agents of respondent and under its management and control. We find no evidence in this record to justify such a finding. It is further stated that the question whether or not a given operator is a motor transportation company does not hinge solely upon ownership or lack of ownership of the vehicles in which the freight is carried, and the case of
 
 Northern Ohio Traction & Light Co.
 
 v.
 
 Pub. Util. Comm.,
 
 113 Ohio St., 93, 148 N. E., 584, is cited. That decision does not support the conclusions reached, because it was only held in that case that a lessee was an owner within the descriptions of the statute. Our interpretation of the testimony taken before the commission is that the respondent did not own the equipment and did not operate the same; that it did not control or manage the equipment; that the owners of the motor vehicles were independent contractors; that respondent exercised no supervision or control over the vehicles or the persons who drove them; and that therefore this evidence does not bring the respondent within the
 
 *11
 
 meaning of the definition of a motor transportation company, as defined in Section 614-34, General Code.
 

 We are not unmindful of the fact that this is an interstate operation, and, while this fact does not militate against subjecting it to public regulation, if it is in fact a common carrier and a motor transportation company, it has called for the exercise of unusual care and diligence in inquiring into the facts and law of this controversy.
 

 If the individual truck owners who are using the highways of this state solely in the transportation of freight for hire are subject to regulation, and can be subjected to proper charges to compensate for such use, the public will have suffered nothing by the method which respondent has adopted in conducting its business, and, if the individual truck owners cannot be so regulated and subjected to charges, that fact is to be deplored. It is not, however, cause for alarm or even regret that some contracts between citizens affecting transportation of freight still remain beyond the reach of governmental regulation.
 

 Order reversed.
 

 Kinkade, Matthias, Day and Allen, JJ., concur.
 

 Robinson and Jones, JJ., dissent.