[Civil No. 2982. Filed May 11, 1931.]

[299 Pac. 126.]

W. D. CLAYPOOL, AMOS A. BETTS and LOREN VAUGHN, as Members of and Constituting the Corporation Commission of the State of Arizona, E. W. WHITWORTH, as Superintendent of the Motor Vehicle Division of the Arizona Highway Department, and JOHN W. MURPHY, as Attorney General of the State of Arizona, Appellants, v. LIGHTNING DELIVERY COMPANY, a Corporation, ARIZONA STORAGE & DISTRIBUTING COMPANY, a Corporation, CHAMBERS TRANSFER & STORAGE COMPANY, a Corporation, and All Other Persons and Corporations Similarly Situated, Appellees.

Mr. K. Berry Peterson, Attorney General, Mr. Arthur T. La Prade, Assistant Attorney General, and Mr. H. A. Elliott, Special Counsel, Arizona Highway Department, for Appellants.

Messrs. Sloan, Holton, McKesson & Scott, for Appellees.

LOCKWOOD, J.—Lightning Delivery Company, a corporation, Arizona Storage & Distributing Company, a corporation, and Chambers Transfer & Storage Company, a corporation, hereinafter called plaintiffs, filed this action against W. D. Claypool, Amos A. Betts, and Loren Vaughn, as members of the corporation commission of the state of Arizona, E. W. Whitworth, as superintendent of the motor vehicle division of the Arizona highway department, and John W. Murphy, as Attorney General of the state of Arizona, hereinafter called defendants, to restrain the latter, as officers of the state, from proceeding to collect from plaintiffs the motor vehicle tax imposed under the provisions of section 1680, Revised Code 1928. The substance of the complaint was that (a) the statute did not apply to plaintiffs, and (b) that, if it did, it was discriminatory and unconstitutional.

Defendants demurred generally and specially to the complaint. The special demurrers were: (a) misjoinder of causes of action; (b) that the action was to

enjoin the collection of a tax; (c) that it was to prevent the execution of a public statute for public benefit; and (d) that plaintiffs had a plain, speedy, and adequate remedy at law. The general demurrer raised the point that the allegations of the complaint showed each of plaintiffs to fall within the terms of the statute. Each of the demurrers was overruled, and, the motor vehicle superintendent having in the meantime determined and assessed the tax due from each plaintiff under the terms of the statute, defendants filed cross-complaints against them, seeking the collection of the tax. They also filed a plea to the jurisdiction of the trial court on the grounds: (a) that plaintiff had a plain, speedy, and adequate remedy at law; (b) that the action sought to enjoin the collection of taxes imposed by the state of Arizona; (c) that the action sought to enjoin the execution by officers of the law of a public statute for public benefit; and (d) that the action constituted a collateral attack upon the judgments and decree of an officer of the state possessing and having exercised judicial power. The plea to the jurisdiction was denied, and upon plaintiffs' motion defendants' cross-complaints were stricken. The matter was tried by the court without a jury, and a decree was rendered in favor of plaintiffs upon the ground that none of them was a common carrier, and therefore within the terms of the statute, except plaintiff Chambers Transfer & Storage Company, and it only in its operation of a stage line from Phoenix to Buckeye, in Maricopa county, and from the decree this appeal has been taken.

While there are a number of other questions involved in the appeal, the primary one is whether or not plaintiffs, or any of them, are common carriers. In considering this question we think it best first to determine the elements necessary to constitute a party a common carrier, and then to apply these elements to the facts in the case at bar.

The Supreme Court of Arizona, in the case of *Santa Fe, Prescott & Phoenix Ry. Co. v. Grant Bros. Construction Co.*, 13 Ariz. 186, 108 Pac. 467, laid down the test by which it is determined whether a party is a common carrier, as follows:

" '(1) He must be engaged in the business of carrying goods for others as a public employment, and must hold himself out as ready to engage in the transportation of goods for persons generally as a business, and not as a casual occupation. (2) He must undertake to carry goods of the kind to which his business is confined. (3) He must undertake to carry by the methods by which his business is conducted, and over his established roads. (4) The transportation must be for hire. (5) An action must lie against him if he refuses, without sufficient reason, to carry such goods for those who are willing to comply with his terms.' "

The first four characteristics set forth in this definition are almost universally approved, and we reiterate them as being correct. We think, however, that, strictly speaking, the fifth has no place in the definition of a common carrier. It is rather a liability which the law imposes on a party only if, as, and when it is already determined to be a common carrier. *Lloyd* v. *Haugh & Keenan Storage & T. Co.*, 223 Pa. 148, 21 L. R. A. (N. S.) 188, 72 Atl. 516. It is not necessary, however, in order to constitute a party a common carrier, that it operate its means of conveyance between fixed termini, nor upon regular schedules, nor at a uniform or fixed tariff. *Cushing* v. *White*, 101 Wash. 172, L. R. A. 1918F 463, 172 Pac. 229; *State* v. *Boyd Transfer & Storage Co.*, 168 Minn. 190, 209 N. W. 872; *Collier* v. *Langan & Taylor Storage & Moving Co.*, 147 Mo. App. 700, 127 S. W. 435; *Jackson Architectural Iron Works* v. *Hurlbut*, 158 N. Y. 34, 70 Am. St. Rep. 432, 52 N. E. 665. And it in no way alters the character of a common carrier that it makes specific and individual contracts, either

written or oral, for each business transaction. *Smitherman & McDonald* v. *Mansfield Hardwood Lbr. Co.,* (D. C.) 6 Fed. (2d) 29; *Breuer* v. *Public Utilities Com.,* 118 Ohio St. 95, 160 N. E. 623; *State* v. *Washington Tug & Barge Co.,* 140 Wash. 613, 250 Pac. 49. Nor can a carrier which holds itself out to the public as being a common carrier divest itself of that character because it has a secret or private intention to reserve the right to refuse to serve such parties as it objects to, or because it may, even upon occasion, exercise such right, particularly if such reservation and exercise thereof is in reality, though not ostensibly, merely for the purpose of divesting itself of the character and responsibility of a common carrier. *Cushing* v. *White, supra; Stoner* v. *Underseth,* 85 Mont. 11, 277 Pac. 437; *Goldsworthy* v. *Public Service Com.,* 141 Md. 674, 119 Atl. 693; *State* v. *Washington Tug & Barge Co., supra; Lloyd* v. *Haugh & Keenan Storage & T. Co., supra; Davis* v. *People,* 79 Colo. 642, 247 Pac. 801; *Sanger* v. *Lukens,* (D. C.) 24 Fed. (2d) 226.

As was said by the Supreme Court of the United States in *Terminal Taxicab Co.* v. *Kutz,* 241 U. S. 252, Ann. Cas. 1916D 765, 60 L. Ed. 984, 36 Sup. Ct. Rep. 583, in determining whether the plaintiff in that case was a common carrier: "The important thing is what it does, not what its charter says." So in this, as in any other similar case, it is the general conduct of the actual business, and not isolated acts or statements, public or private, which fix the character of a common carrier on a party. And no form of subterfuge or evasion will prevent the courts from going behind the form to the substance.

The Lightning Delivery Company advertised for years in the daily papers and by posters. Samples of the nature of this advertising may be quoted as follows:

"A commercial trucking service that has proven successful for 32 years in Arizona."

"Our large fleet of fast trucks enable the shipper and other persons or firms requiring commercial hauling to get efficient, skillful and careful handling of his needs. Our household moving men are experts, and will handle your valued possessions as carefully as you would yourself."

"They can't come too big for us. Last week our large 15-ton trailer was requisitioned to move the Messenger press."

The testimony of the manager of the company was that it handled between twenty and twenty-five thousand separate transportation jobs per year; that it never advertised that it reserved the right to refuse business, or limit whom it would serve, though it did occasionally refuse to serve various parties, either because they were not good pay, because the company did not have the proper equipment, or because the transportation of the particular property would be generally detrimental to its business. Part of its business was transacted by special contracts, and part without any such contracts.

Arizona Storage & Distributing Company advertised in substantially the same manner as the Lightning Delivery Company. We quote samples:

"Ours is a government bonded and licensed service, thoroughly responsible. Our variety of scope, up-to-date van and truck service, hauling from any distances, our storage facilities, make ours a service that is ready for any demand, great or small. There is no question of our ability to handle your problems in the most efficient and money-saving manner."

"Our equipment and facilities are such that we can handle any type of hauling and storage."

It also operates in the same general manner as the Lightning Delivery Company, sometimes by special written contract and sometimes not, with its charges regulated according to the nature of the business, and

occasionally rejected business tendered it for substantially the same reasons as its coplaintiff.

Chambers Transfer & Storage Company advertised as follows:

"A Huge Fleet of Chambers Trucks Ply the Highways of the State.

"The trucks that you meet oftenest on the highways of the state are Chambers trucks, they may be loaded with cotton, merchandise, or they may be carrying the household goods of a newcomer to the state, they may be hauling a simple thing or the machinery for a power plant, but whatever the load, they will be rolling right along, setting the rule that most folks find Chambers service the most satisfactory obtainable."

"If you want hauling, Local or Long Distance Moving—Shipping, Baggage Transferred, 'Better Service at Less Cost.'"

And its customs in regard to special contracts and the rejection of business were the same as the other plaintiffs. The officials of each plaintiff admitted, in substance, that generally speaking their companies did supply any transportation service which was legal, if they had the equipment for handling it, and the patron was willing to pay the price.

We are of the opinion that the evidence establishes beyond contradiction that each of plaintiffs held itself out as engaged in the business of carrying goods for others as a public employment, and not as a casual occupation; that it undertook to carry goods of substantially any class, in accordance with its general character and business, and that such transportation was for hire. These facts constitute them all common carriers. It is true that the evidence also shows that each of plaintiffs, in addition to its business as a common carrier, sometimes acted as a private carrier, and also conducted a storage warehouse business. A common carrier may, however, engage in other business, and that fact cannot affect its character and lia-

bility while engaged as such common carrier. *Santa Fe, Prescott & Phoenix Ry. Co.* v. *Grant Bros. Const. Co., supra; Jackson Arch. Iron Works* v. *Hurlbut, supra; Dwight* v. *Brewster,* 1 Pick. (Mass.) 50, 11 Am. Dec. 133; *Chevallier* v. *Straham,* 2 Tex. 115, 47 Am. Dec. 639; *Kimball* v. *Rutland etc. R. R. Co.,* 26 Vt. 247, 62 Am. Dec. 567.

But, it is urged, even admitting for the sake of argument that plaintiffs are common carriers, they do not belong to the class of common carriers subject to the tax set forth in section 1680, Revised Code of 1928. This contention is based upon the language of sections 736, 1680, 1681 and 1682, Revised Code of 1928, which read, so far as material, as follows:

"§ 736. Certificate of convenience and necessity; application; hearing; terms of certificate. No person shall operate any motor vehicle for the transportation of persons or property as a common carrier for compensation on any public highway, street or alley in the state, or between any fixed termini, without first having obtained from the commission a certificate of public convenience and necessity. . . . "

"§ 1680. License tax on operators of commercial vehicles; determining gross receipts. Every person owning, operating or managing any motor vehicle used in transportation of persons or property as a common carrier for compensation over any public highway, other than busses used exclusively for the transportation of pupils to or from any public school when owned or operated by the school or school district, shall in addition to all other taxes and fees, pay the following license tax: . . . a license tax equal to two and one-half per cent. of the gross receipts from operations of such company within this state; when operating partly within and partly without this state, the gross receipts within this state shall be deemed to be all receipts of business beginning and ending within this state, and a proportion, based upon the proportion of the mileage within this state to the entire mileage over which business is done, of receipts on all business passing through, into or out of this state."

"§ 1681. Corporation commission to furnish names of permit holders; monthly statement and tax payment. The vehicle superintendent shall enforce the provisions of this article. The corporation commission shall furnish to the superintendent the name of every person to whom a permit to operate a motor vehicle in the business of transporting persons or property for compensation over any public highway is issued, together with such information as the superintendent may require. . . . "

"§ 1682. Failure to pay tax and file statement; penalty; lien for; collection. If any person fails to pay such license tax, or file the statement herein provided within five days from the day such taxes become due, his permit shall be revoked by the corporation commission, and a penalty of twenty-five per cent. of such tax shall be imposed. . . . "

It is claimed that these sections, construed together, show clearly it was the intention of the legislature to impose the tax in question only upon common carriers which had taken out a certificate of necessity and convenience under section 736, *supra,* and much is made by plaintiffs of the use of the words "license tax" as showing that it refers only to motor vehicles for the use of which a permit under section 736 has been taken out. The record shows that each of plaintiffs had at one time applied for and received such certificates, but that at the time this suit was commenced they had allowed them to lapse. If, as a matter of fact, plaintiffs belong to the class of common carriers required by law to take out certificates of necessity and convenience, the fact that they have neglected to do their duty would not relieve them from a tax imposed on that class. But we think it unnecessary to pass on the question of whether they should have taken out such certificates, or not. Section 1680, *supra,* explicitly describes the class of common carriers subject to the tax as "a common carrier for compensation over any public highway," with no other limitations or qualifications. Sections 1681 and 1682

are plainly only for the assistance of the motor vehicle superintendent in enforcing the tax, and in no way attempt to define or point out the parties liable thereto. It is obvious on a careful comparison of sections 736 and 1680 that the permit required under the former is, in substance, an exercise of the police power for the purpose of regulating the manner of using the public highways. The latter, on the other hand, is in effect a tax imposed on common carriers for the privilege of operating on those highways. The context and arrangement of the sections show clearly their entirely different purposes, and that one in no manner affects the liability imposed by the other. We therefore hold that plaintiffs are not merely common carriers, but are carriers of a character subject to the tax.

It is insisted that the legislature has no power to compel a private carrier to become a common carrier. With this contention we agree. *State* v. *Smith,* 31 Ariz. 297, 252 Pac. 1011; *Frost* v. *Railroad Com.,* 271 U. S. 583, 47 A. L. R. 457, 70 L. Ed. 1101, 46 Sup. Ct. Rep. 605. But we cannot see where this undisputed principle has any application in the present case. The legislature made no attempt, as in the Frost case, to declare who should be considered common carriers under section 1680, *supra,* but merely said that parties operating motor vehicles as common carriers were liable to the tax, leaving the ordinary rules of law to determine whether or not any particular party came within the category.

The next contention of plaintiffs is that their inclusion among those intended to be taxed would be unjust and presumably unconstitutional in that they would be discriminated against with no compensating privileges given them. We have never heard it urged before that the granting of compensatory privileges was a prerequisite to the right of a state to impose an excise or tax. The only limitation upon the tax-

ing power of the state is that all persons or property in the same class must be taxed alike, and that the classification must be reasonable in its nature. Article 9, § 1, Const. Ariz. The general classification "common carrier, using the public highways of the state," is the one which determines who are subject to the tax, and it certainly cannot be said that it is not a general and reasonable one. If it be true that some common carriers are given privileges by another statute which are not extended to plaintiffs, that might perhaps be a proper objection to the law extending the special privilege or imposing the particular limitation, but could in no way affect the constitutionality of the statute involved herein.

If we understand the next point made by plaintiffs, it is that a tax imposed upon a common carrier as such cannot apply to the receipts of a separate and independent business conducted by the carrier. Assuming for the purposes of the argument that this is true, we cannot see where it affects the legality of the tax in question. The statute imposes "a license tax equal to two and one-half per cent. of the gross receipts from operations of such company within this state; when operating partly within and partly without this state, the gross receipts within this state shall be deemed to be all receipts of business beginning and ending within this state, and a proportion, based upon the proportion of the mileage within this state to the entire mileage over which business is done, of receipts on all business passing through, into or out of this state." We think it obvious from the language quoted that the intent of the legislature was to impose such tax only upon the gross receipts of the party in its business of common carrier, and not upon those of a separate and independent business of a different nature which the carrier might also conduct. It is true that this will require the carrier, if it engages or claims to be engaged in some other business, sep-

arate and distinct from that of a common carrier, to keep books of account, showing the separate receipts of the two businesses, but this is a matter of procedure in no way affecting the constitutionality of the statute. The general principle to be used in determining the matter is simple—the receipts from the actual transportation of goods and the services reasonably and necessarily incident to such transportation would fall within the class subject to taxation. The receipts, if any, from any other class of business would not be subject to the tax. Each particular item would have to be determined by this test, but, as we have indicated, this is a matter of bookkeeping, in accordance with the rule above laid down.

Since, as we have held, each of plaintiffs was a common carrier as to at least part of its business, and a carrier of the nature subject to taxation under section 1680, *supra,* and since such section is constitutional, the trial court erred in rendering judgment in their favor.

There remains only the question as to whether or not the court should proceed to hear evidence on the cross-complaints which were filed by defendants in an attempt to collect the tax which they claimed to be due from each one of plaintiffs. It is said that the suit filed by plaintiffs is an equitable one, asking for equitable relief only, while the cross-complaints are in the nature of actions at law to recover an alleged debt.

It is urged that an action at law may not constitute a cross-complaint or cross-bill against a suit in equity, and plaintiffs cite the following cases as upholding this rule: *Dose* v. *Beatie,* 62 Or. 308, 123 Pac. 383, 125 Pac. 277; *Francis* v. *Hazlett,* 192 Mass. 137, 116 Am. St. Rep. 230, 78 N. E. 405; *Ellis* v. *Southwestern Land Co.,* 102 Wis. 409, 78 N. W. 583. Under the Code practice in Arizona, while the fundamental principles of equity and law are still distinct as in the

past, the procedure is much simplified, and it is the general rule that a complaint should set up the cause of action without distinction between actions at law and in equity, or the nature of the relief demanded. Section 3746, Rev. Code 1928. If this be true, it would appear that cross-bills or cross-complaints should be viewed with great liberality and construed in the interests of justice and the complete determination of all matters in controversy between the parties and arising out of the subject matter of the original action. There is excellent authority for such a rule. In the case of *Asbury Park & S. G. Ry. Co.* v. *Township Committee,* 73 N. J. Eq. 323, 67 Atl. 790, the plaintiff secured a right of way through Neptune township in accordance with the provisions of a certain ordinance which granted the township five per cent. of the gross receipts of plaintiff as compensation for the use of the streets. The plaintiff paid the tax above for some years, but for various reasons it stopped payment of the full amount, and for a number of years paid the fixed sum of $400 per year. Thereafter the township committee called upon it to make the full payments according to the ordinance, and plaintiff at once filed its bill against defendant, asking that the latter should be enjoined from repealing the ordinance or removing the railroad tracks of plaintiff for failure to make such payments. Defendants answered the bill, and by cross-bill sought to collect from plaintiff the delinquent tax. It was charged in that case, as in this, that the cross-bill sought a legal remedy only, and a demurrer was filed thereto. The court stated: "While it is true that a cross-bill filed against a co-defendant must rest on considerations of equity, a different and more liberal rule applies when the cross-bill is filed against the complainant. In such case the cross-bill is strictly a mode of defense, and, as against the complainant, the defendant may use all the weapons within his

reach. 2 Dan. Ch. Pr. 1549; Mitford, Eq. Pl. (81) 99; Shipman, Eq. Pl. 406. All the cases cited on this point in the complainants' brief are cases relating to original bills. An answer is a shield, not a weapon. It replies to the complainants' equities. The cross-bill, while in aid of a defense, is also a mode of attack along lines which are necessary for a full defense and a complete adjudication of all the disputes that arise out of a transaction or series of transactions.'' And it was held that the whole matter should be dealt with in one suit.

A somewhat similar situation arose in the case of *Grabill* v. *Barnhart Brothers & Spindler*, 160 Mich. 81, 125 N. W. 16, wherein plaintiffs sought to rescind a contract and defendant in its cross-bill prayed for a decree for a balance alleged to be due under the contract. The court held that such relief could be granted. The Supreme Court of the United States in *Chicago, M. & St. P. Ry. Co.* v. *Third Nat. Bank*, 134 U. S. 276, 33 L. Ed. 900, 10 Sup. Ct. Rep. 550, said: ''Where, in a court of equity, an apparent legal burden on property is challenged, the court has jurisdiction of a cross-bill to enforce by its own procedure such burden.'' (See, also, *Coghlan* v. *City of Boise*, 36 Idaho 613, 212 Pac. 867.) We are of the opinion that it is proper in this proceeding that defendants may have the matters set up in their cross-complaints determined.

The judgment of the superior court of Maricopa county is reversed and the case remanded, with instructions to deny to plaintiffs the injunctive relief sought, and to proceed to a hearing on defendants' cross-complaints in accordance with the principles laid down in this opinion.

McALISTER, C. J., and ROSS, J., concur.