Allen, J.
 

 The following facts are established by the record:
 

 Hannah H. Larkin is the owner of certain trucks and other equipment, engaged in business in the city of Dayton as a transportation and storage company, doing business under the firm name of Larkin Transfer
 
 &
 
 Storage Company. Her son, Daniel C. Larkin, is engaged in business in the city of Dayton as Larkin Motor Freight Terminal. Daniel C. Larkin owns the freight terminal, but possesses no equipment. The record shows that neither of these businesses is incorporated, being owned respectively by Hannah H. Larkin and Daniel C. Larkin. For approximately the past year Daniel C. Larkin has been operating under so-called “contracts” or “arrangements” made with certain shippers for the transportation of freight from points within a radius of thirty miles of Dayton, such as Xenia, Piqua, Troy, West Carrollton, and Miamisburg, through Dayton for points destined beyond Dayton. These shipments are carried by Hannah H. Larkin with her trucking service from outside the city of Dayton into the Larkin Motor Freight Terminal at Dayton, owned by Daniel C. Larkin, and from that point are shipped to interstate points, being carried by the Interstate Trucking Company and by other interstate carriers, which companies pay the consideration for such shipments to Daniel C. Larkin under a private agreement with him. Daniel C. Larkin reimburses Hannah H. Larkin for this service at a
 
 *557
 
 stated rate per hundred pounds, and no consideration moves from the shippers direct to Daniel C. Larkin or to Hannah H. Larkin. This controversy concerns only the service rendered from outside points into the city of Dayton, and from the city of Dayton to outside points, and'not the intracity service rendered hy Hannah H. Larkin and hence raises no question of the regulation of transportation operated exclusively within the boundaries of municipalities under Section 614-84, General Code.
 

 It is the contention of Daniel C. Larkin that inasmuch as he owns no equipment and operates under alleged private contracts, he is a private contract carrier within the holding in
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, 146 N. E., 808, and
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 1, 165 N. E., 355. In the case of
 
 Hissem
 
 v.
 
 Guran,
 
 it was held: “The owner of a motor-propelled vehicle engaged in the business of carrying and transporting property in such vehicle for hire over the highways of this state pursuant to a definite contract describing the property to be carried and the points to and from which the same shall be carried and the compensation to be paid, such owner not holding himself out to the public as willing to carry property for other persons, and not in fact carrying property for any other persons than those with whom he has thus contracted, and not operating under any public franchise, is not a common carrier, and is not a motor transportation company as that term is defined in Sections 614-2 and 614-84, General Code (110 O. L., 212, 213).” In that ease Guran was employed by a milk producer’s association, for which he hauled under exclusive contract, not serving the
 
 *558
 
 public generally, or any person or firm other than the members of the milk producers’ association.
 

 In
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 120 Ohio St., 1, 165 N. E., 355, decided February 13, 1929, it was held that the contract to provide for transportation is equivalent to a contract to transport, but that in order to constitute a “motor transportation company,” as defined in the General Code, the transportation company must own, control, manage, or operate the motor vehicles used in transportation. In that case a company rendering service as haulage contractors or brokers, owning no equipment and exercising no supervision over the management or operation of the motor vehicles used in transportation, was held not to constitute a motor transportation company. However, in this case Daniel C. Larkin exercises a positive supervision and direction over the trucking carried on in the trucks which are owned by his mother. This was testified to by Eugene Schaefer, general manager of Larkin Transfer
 
 &
 
 Storage Company, who stated that Daniel C. Larkin “tells us what customer — what to pick up and what not to pick up,” and also stated that Hannah H. Larkin, in furnishing this service outside of Dayton, operates under the direction of the Larkin Freight Terminal; that is to say, under the direction of Daniel C. Larkin.
 

 .Subsequent, moreover, to the decision of
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 Sections 614-2 and 614-84, General Code, were amended (April 6, 1929,113 Ohio Laws, 482). Section 614-2, General Code, as it existed before the amendment, did not include a person furnishing transportation
 
 *559
 
 service, and excepted private contract carriers from the operation of Section 614-84. The latter section made the owning, controlling, operating, or managing of motor-propelled vehicles an essential part of the definition of a motor transportation company. Obviously, therefore, the Legislature amended the statute to take care of the precise situation which existed when this court held that Motor Freight, Inc., did not come within the purview of the statutes. The statute (Section 614-2) now defines a “motor transportation company” as:
 

 “Any person of persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated. * * *
 

 “When engaged in the business of carrying and transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, in or by motor propelled vehicles of any kind whatsoever, including trailers for the public in general, over any public street, road or highway in this state, except as otherwise provided in Section 614-84 * * *.”
 

 We proceed, therefore, to inquire whether under the statute in its present form Daniel C. Larkin is engaged in the business of transporting property or providing or furnishing such transportation for hire for the public in general, in motor-propelled vehicles over the highways of the state.
 

 Since this court held in
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission, supra,
 
 that a contract to provide for transportation is equivalent to a contract to transport, within the holding of that case Daniel C. Larkin is engaged in the business both of
 
 *560
 
 providing or furnishing transportation and of transporting property. It is conceded that he does this for hire, in motor-propelled vehicles over the highways of the state, and the only serious question remaining for disposition is whether he does this for the public in general. If he does,
 
 Hissem
 
 v.
 
 Guran, supra,
 
 does not apply. It is Daniel C. Larkin’s contention that he furnishes terminal facilities merely; that he coordinates existing modes of communication by contract so that delivery schedules are shortened and the actual time consumed in transit over existing transportation lines is materially lessened. He claims that he procures this freight on private contract only, for trans-shipment and routing from his terminal at Dayton by such means as in each instance will result in the saving of time to the consignor and the consignee. The record shows that Larkin has arrangements with nine contract shippers that he will route through his terminal their freight shipments in such a manner that from one to five days is saved in shipping time over theretofore existing modes of transportation. However, Larkin does not make a contract for every shipment. He is notified of the amount of freight to be shipped from each of the shippers with whom he has this particular arrangement. The shipments which he secures are sufficient to employ the entire equipment of Hannah H. Larkin’s trucking company used in the transportation outside of the city of Dayton. The Larkin Transfer & Storage Company carries for nobody outside the city of Dayton other than for Daniel C. Larkin doing business as the Larkin Motor Freight Terminal. The adver
 
 *561
 
 tisement which appears in the telephone directory is as follows:
 

 “Larkin Transfer & Storage Co.
 

 “Local and Long Distance Trucking
 

 “City and Suburban Deliveries
 

 “General Merchandise Storage
 

 “Pool Car Distribution and Forwarding. Railroad siding facilities. Truck terminal
 

 “Door-to-door delivery
 

 “ ‘ Ovemite-everynite ’ — fast motor freight inbound and outbound — principal cities Ohio — Indiana —Michigan—Kentucky—West Virginia — Illinois— Wisconsin — Missouri
 

 ‘ ‘ Offices — Warehouse—Truck Terminal
 

 “521-525 East First Street.
 

 “Telephones Main 90 Main 272
 

 “Larkin Transportation Since 1864.”
 

 The delivery slip of Larkin Motor Freights Terminal contains the following:
 

 “Freight forwarding and distributing.
 

 ‘ ‘ O vernite-E verynite. ’ ’
 

 It is conceded by the Larkins that they have delivered freight to and from companies which they admit not to be contractees and that their business is solicited by them from the better shippers. Daniel C. Larkin also conceded upon hearing that he furnishes transportation service. The amount of freight to be shipped by any one of these nine alleged contract shippers is not limited either in time or in amount, and the “contract” may be terminated at will by either party. The payment is made by the shippers to the interstate carriers, which pay the consideration to Daniel C. Larkin, and he receives nothing from the shippers directly for their transportation movements.
 

 
 *562
 
 This phase of the case presents a question of fact. Under the case of
 
 C. Sheets & Sons
 
 v.
 
 Public Utilities Commission, ante,
 
 343, 178 N. E., 416, 417, a similar operation was found by this court to constitute a common carrier operation. In that case Sheets operated four trucks, taking all the long-distance hauling that he could get. The holding of the court was based largely upon the fact that the trucks carried the name Sheets & Sons, and the words “Local and Long Distance Hauling,” and that the following sign was on the window:
 

 “C. Sheets
 
 &
 
 Sons
 

 “Local & Long Distance Hauling
 

 “Taylor 0659.”
 

 The telephone directory contained the following statement:
 

 “Sheets & Sons
 

 “East Toledo’s Oldest and
 

 “Most Careful Movers
 

 “Moving and Storage
 

 “And Long Distance Moving.
 

 “Expert Piano Moving.
 

 “Vans Every Load Insured.
 

 ‘ ‘ Taylor 0659. 449 First St. ’ ’
 

 This evidence of advertisements, signs on the office door, and on moving vans, together with the evidence of the shipments, was stressed by this court in its holding that the Sheets’ business was that of a common carrier.
 

 We see no substantial difference between the advertisements in the
 
 Sheets case
 
 and those in this case.
 

 Under the authority of the
 
 Sheets case,
 
 bearing in mind the amendment to the statute, we hold that the
 
 *563
 
 Commission’s ruling that the operation constitutes a common carrier- operation is not unreasonable or unlawful, and affirm the Commission upon that point.
 

 Proceeding to consider whether the commission erred in denying the application of Hannah H. Larkin, doing business as Larkin Transfer & Storage Company, for a certificate to operate upon an irregular route, we are confronted with the conceded fact that the territory in question is served by the following certificated carriers for transportation of freight:
 

 Between Dayton and Xenia: The Dayton-Xenia Railway Company, the Dayton, Xenia & Wilmington Motor Freight Company, the Pennsylvania Railroad Company, and the Baltimore
 
 &
 
 Ohio Railroad Company.
 

 Between Xenia and Springfield: The Springfield & Xenia Railroad Company, and the Pennsylvania Railroad Company.
 

 Between Dayton and Springfield: The Cincinnati & Lake Erie Railroad Company, the Erie Railroad Company, the Big Four Railroad Company, and several certificated motor truck companies.
 

 Between Dayton, Troy, and Piqua: The Dayton
 
 &
 
 Troy Electric Railway Company, the City Transfer
 
 &
 
 Storage Company (Troy, Ohio), the Jackson Bros. Motor Truck Company, and the Baltimore & Ohio Railroad Company.
 

 Between Dayton, Miamisburg, and Franklin: The Cincinnati & Lake Erie Railroad Company, the Big Four Railroad Company, the Baltimore & Ohio Railroad Company, and several certificated motor truck compames.
 

 Hence we are compelled to affirm the order of the
 
 *564
 
 Public Utilities Commission upon tbe ground that tbe territory applied for is already amply served.
 

 Order affirmed.
 

 Markhat.t., C. J., Jones, Matthias, Day, Kinkade, and Robinson, JJ., concur.