Allen, J.
 

 The plaintiff in error contends that the order of the commission is unlawful and unreasonable for the following reasons:
 

 “1. The commission was without jurisdiction to hear and determine said complaint, for the following reasons:
 

 “(a) The complainant was without standing and the complaint was unauthorized.
 

 “(b) The complaint presented no issue for the determination of the commission.
 

 “(c) If any issue was presented, it was legal or judicial in character.
 

 “2. Defendant railroad company did not violate the motor transportation law.
 

 
 *594
 
 “3. That the order was void in that it required the respondent to cease and desist from the haulage of interstate traffic.
 

 “4. That it was void in that it impaired the obligation of the contract between plaintiff in error and The A. B. Peek Company, and invaded constitutional provisions both Federal and State.”
 

 Proceeding to consider whether the commission was without jurisdiction to hear and determine such complaint, the court overrules this objection for the reason that the statute specifically vests such jurisdiction in the Public Utilities Commission. The case was tried under the statute as it was enacted in 111 Ohio Laws, 513. The amendments in 113 Ohio Laws, 482, do not affect this particular controversy.
 

 Under Section 614-2, General Code, the Legislature provided that any company or corporation, “when engaged in the business of carrying and transporting persons or property, or both as a common carrier, for hire, in motor propelled vehicles of any kind whatsoever, * * * over any public street, road or highway in this state, except as otherwise provided in Section 614-84, is a motor transportation company.” The exception provided in Section 614-84 includes private contract carriers and companies and corporations which are operated exclusively within the territorial limits of a corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto, and also operation by taxicabs, hotel busses, school busses or sight-seeing busses. The New York Central Railroad Company does .not come within any of these exceptions.
 

 Section 614-84, par. c, provides that whether ox
 
 *595
 
 not the operator or carrier is engaged as a motor transportation company, or as a private contract carrier, shall be a question of fact, and the finding of the commission thereon shall be a final order which may be reviewed as provided in Section 614-89, General Code.
 

 This proceeding, therefore, is not a proceeding to decide whether a private contract operation by the Peek Company has become a common carriage operation. The sole question presented is whether the New York Central Railroad Company constitutes a motor transportation company because of its common carriage operation in motor-propelled vehicles upon the public highways of the state. This being the case, the complainant has standing, and the complaint is authorized, for the statute which provides for the institution of complaints against motor transportation companies is not limited, but applies to any company or corporation.
 

 The issue presented for the determination of the commission was whether the New York Central Railroad Company, at the time charged in the complaint, owned, controlled, operated, or managed any motor-propelled vehicle used in the business of transportation of persons or property, or both, as a common carrier for hire, over any public highway in this state.
 

 It was conceded that the transportation was over the public highways. It was conceded that the transportation was transportation of property in common carriage for hire. The only issue of fact was whether the New York Central Railroad Company owned, controlled, operated, or managed the trucks used in the transportation of such freight.
 

 
 *596
 
 It is conceded by the Public Utilities Commission that the railroad company does not own, nor operate, such motor-propelled
 
 vehicles;
 
 but it was found by the commission specifically that the railroad does control and manage the vehicles.
 

 Hence there was an issue presented for the determination of the commission which issue was by it decided.
 

 The railroad company urges that whatever issue was presented was legal or judicial in character, and that the commission had no jurisdiction to make a determination upon that issue. Like many determinations of administrative boards, the decision of the commission involved certain legal aspects; but that fact does not necessarily make the issue presented judicial rather than administrative, nor, necessarily, does it deprive the commission of jurisdiction. The statute specifically provides that whether or not the operator or carrier is engaged as a motor transportation company or a private contract carrier shall be a question of fact. Certainly the test of. private contract carriage laid down in the case of
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, 146 N. E., 808, made such question one of fact. It is not contended that the Legislature does not have the power to declare this question to be a question of fact, and since it was the sole question determined by the commission, we are compelled to overrule both this objection and also the entire objection as to jurisdiction.
 

 Proceeding to consider whether the defendant railroad company in this operation violates the Motor Transportation Law, we also decide that the Public Utilities Commission was justified in its finding upon the facts. It is conceded by the railroad
 
 *597
 
 company that, while it does not own the trucks and trailers, it selects the property which shall be conveyed in the motor vehicles, it picks out the routes which shall be traveled, and indicates the times and schedules under which the vehicles shall travel. Complete supervision of the operation is in the New York Central Railroad Company. The trucks are used exclusively for the railroad, and at every minute of the time of carriage the property transported is under the railroad’s control, being handled through the use of bills of lading and waybills, exactly as all other classes of freight. By the use of these trucks the New York Central Railroad Company cannot and has not divested the carriage of the features of a common carrier transaction. It still holds itself out to the public as a common carrier of this freight, which it transports upon motor vehicles. It receives this freight in exactly the same way at its freight stations that all other freight transported by its railroad is received. As between the public and the New York Central Railroad Company the transaction differs in no essential from transportation by rail. Hence the New York Central Railroad Company under this record is not only a common carrier for hire, but with reference to this particular freight it is a common carrier for hire, and the contract of carriage never ceases to be a contract of common carriage.
 

 It is further urged that the order was void in that it required the respondent to cease and desist from the haulage of interstate traffic. We do not so read the order. The order compels the New York Central Railroad Company to comply with the statutes with reference to certificate and taxes if it trans
 
 *598
 
 ports its freight by motor vehicles. It has been held by this court that while the states may not shut out from interstate traffic motor transportation companies which operate in such traffic, they may require such operators to obtain certificates, pay taxes for the use of the highways, carry insurance, and comply with other police regulations in so far as the same do not involve a direct burden upon interstate commerce.
 
 Cannon Ball Transportation Co.
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 565, 149 N. E., 713. The syllabus of this case reads as follows:
 

 “1. Sections 614-86 to 614-102, inclusive, of the General Code of Ohio, are designed to regulate motor transportation, governing all motor vehicles operating over the highways of the state, but do not authorize the Public Utilities Commission to exclude motor transportation companies operating in interstate traffic from such highways.
 

 112.
 
 Motor transportation companies operating in interstate traffic are subject to the provisions of said sections and the regulations therein provided may be applied to all interstate operators, except in so far as such application would involve a direct burden upon interstate commerce.
 

 “3. A condition in a certificate of convenience and necessity granted to an interstate operation that passengers may not be received, within the state of Ohio whose destinations are also within the state of Ohio is not an unreasonable condition, and does not operate as a direct burden upon interstate commerce. ’
 
 ’
 

 The same principle has been enunciated by the Supreme Court of the United States:
 
 Clark
 
 v.
 
 Poor,
 
 
 *599
 
 274 U. S., 554, 47 S. Ct., 702, 71 L. Ed., 1199;
 
 Sprout
 
 v.
 
 City of South Bend,
 
 277 U. S., 163, 48 S. Ct., 502, 72 L. Ed., 833, 62 A. L. R., 45;
 
 Interstate Busses Corp.
 
 v.
 
 Holyoke Street Ry. Co.,
 
 273 U. S., 45, 47 S. Ct., 298, 71 L. Ed., 530. In the opinion in the
 
 Clark case,
 
 at page 556 of 274 U. S., 47 S. Ct., 703, the court says:
 

 ‘‘ The plaintiffs claim that, as applied to them, the Act violates the commerce clause of the Federal Constitution. They insist that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the State; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under Section 614-94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the State to ensure safety and convenience and the conservation of the highways.
 
 Morris
 
 v.
 
 Duby
 
 (No. 372), 274 U. S., 135, 47 S. Ct., 548, 71 L. Ed., 966 * * *
 
 Hess
 
 v.
 
 Pawloski
 
 (No. 263), 274 U. S., 352, 47 S. Ct., 632, 71 L. Ed., 1091 * * *. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use.
 
 Hendrick
 
 v.
 
 Maryland,
 
 235 U. S., 610, 35 S. Ct., 140, 59 L. Ed.,
 
 *600
 
 385;
 
 Kane
 
 v.
 
 New Jersey,
 
 242 U. S., 160, 37 S. Ct., 30, 61 L. Ed., 222. Compare
 
 Packard
 
 v.
 
 Banton,
 
 264 U. S., 140, 144, 44 S. Ct., 257, 68 L. Ed., 596.”
 

 In
 
 Interstate Busses Corp.
 
 v.
 
 Holyoke Street Ry. Co., supra,
 
 the Massachusetts law required a license and a certificate of public convenience and necessity for operation of motor vehicles on public highways for intrastate carriage of passengers for hire. The Supreme Court of the United States held that the law was not shown in that particular case to work a direct interference with or burden upon the interstate business of the bus company, which carries both interstate and intrastate passengers. It decided that the state has power reasonably to regulate and control the use of its public highways in the public interest, not directly burdening or interfering with interstate commerce, and held that the burden was upon the plaintiff to prove that the enforcement of the act would prejudice its interstate passenger business.
 

 It is further urged that the ruling of the Public Utilities Commission impairs the obligation of the contract between the railroad company and the Peek Company and invades constitutional provisions. No specific authorities upon these points are given, and indeed could not be found. The courts have never held that a contract between private parties which would permit the evasion of a state statute will protect those parties from the operation of state law upon the ground of interference with the obligation of contracts. The statute itself is read into and becomes a part of the contract.
 

 It is urged that this holding runs counter to the decision in
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities
 
 
 *601
 

 Commission,
 
 120 Ohio St., 1, 165 N. E., 355. Certain pronouncements in that decision squarely support the holding here, for in the second paragraph of the syllabus it was declared:
 

 “By the provisions of Sections 614-2 and 614-84, General Code, only a ‘motor transportation company’ as defined therein is subject to public regulation; such definition requires that the transportation company must own, control, manage, or operate the motor vehicles used in transportation.”
 

 The facts in that case are squarely distinguishable from the facts in this case, and the pronouncement of law as to control is exactly the same. In that case the only testimony in the case established that the Motor Freight Company did not own, control, operate, or manage any motor propelled vehicles. Moreover, the third paragraph of the syllabus and the statement of facts show that in that case the carrier did not hold itself out as willing to serve the public indiscriminately. The truck owners furnished their own drivers, and the drivers were not in any way subject to the orders of the respondent. No particular route was designated. It is to be observed that in the
 
 Motor Freight case
 
 the transportation was purely interstate. No intrastate question was involved. Moreover, a number of private truck owners were employed to do the haulage, while here only one truck owner was employed. All of the truck owners in the
 
 Motor Freight case
 
 were free to haul merchandise for others, while here the Peek Company hauled solely for the railroad and was so obligated under its contract with the railroad.
 

 Under the sharp differentiation of the facts, we
 
 *602
 
 conclude that the doctrine of
 
 Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission
 
 is in no way infringed by the holding in this case.
 

 Order affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones, Matthias and Day, JJ., concur.