By the Court.
 

 On November 6,1929, the Railway Express Agency applied to the Public Utilities. Commission for an intrastate freight certificate of public convenience and necessity, authorizing it to operate between Delroy and Canton, via Carrollton, Oneida, Minerva, Robertsville, and East Canton; the route applied for being within the state. It proposed to operate a single two and one-half ton truck, making one round trip daily between the termini. Protests were filed, one by a motor transportation company operating that part of the proposed route applied for between Minerva and Canton, while another' protested against granting a certificate over that part of the applicant’s proposed route lying between Carrollton and Canton. The applicant, for a long period of time, had conducted an express business by train transportation, nation wide in character; and for many years prior to July 1,1929, it and its predecessors had maintained agencies for express service at East Canton, Minerva, Carrollton, Delroy, and intermediate points upon the route applied for. The transportation service between these points had been furnished for the applicant by means of the Wheeling & Lake Erie Railroad Company, through agencies established in the above communities, until July 1, 1929, when that road discontinued its passenger, mail, and express service entirely. The applicant then used its own truck for express deliveries, without obtaining a certificate, but on November 6, 1929, it applied for this certificate to operate
 
 *161
 
 a two and one-half ton truck line over the route mentioned between Canton and Delroy.
 

 An attorney examiner recommended that the application be dismissed because (1) the evidence did not show inadequate service was being rendered by the existing motor transportation companies of the protestants; (2) there was no evidence of necessity shown between the points of Delroy and Oneida; (3) the application was not accompanied by a lawful schedule of rates; (4) that since the applicant admitted that it had transported property after the discontinuance of train service, without obtaining a certificate of public convenience, in violation of law, the applicant was not a fit party to be granted a certificate; and (5) that the existing motor transportation companies were able and willing to put on additional service if any need therefor should be shown.
 

 The commission approved recommendations Nos. 1, 2, 3, and 5 of its attorney examiner, denied the application, ordered the applicant to cease its present truck operation, and intimated in its opinion that a certificate would issue over any portion of the route not occupied by either of the protestants. After denial of a certificate, and after rehearing, the express agency prosecuted error to this court.
 

 In its consideration of the fourth recommendation of the attorney examiner, that the application be denied because of illegal operation since July 1, 1929, the commission said: “The commission does not feel called upon to say that the recent operation of trucks by the applicant renders it an unfit party to be granted a certificate. The operation was not in defiance of any order of the commission, but through a misunderstanding of the rights of the applicant.”
 

 
 *162
 
 Under the peculiar circumstances developed in this record, we think that the plaintiff in error’s application for a certificate should have been granted. Its operation after July 1, 1929, was carried on in good faith and only for the purpose of continuing the same service it had theretofore given the public. The express agency disclaimed any intention of carrying any other goods than such as would be consigned to it for express delivery. However, under the Motor Act, upon grant of a certificate, it would become a common carrier subject to the same liabilities incurred by other motor transportation companies. "While it might not be incumbent upon it to seek or advertise for business, still it would be required to accept such as might be offered to it by the general public. Here it desired the operation of a single truck with one round trip each day; this restriction could lawfully be placed upon the operation by the commission, especially as the express agency disclaimed any other purpose than that of carrying on its express service.
 

 The peculiar character of express transportation and service, in our opinion, as distinguished from that rendered by the usual motor companies, should also be taken into consideration. The former, by its close alliance with train schedules, is, we think, better equipped for giving through service to shipper and consignee in intra and interstate transportation, especially the latter. It is commonly well known that express shipments of very valuable goods are frequently made. Some consideration should be given to the financial responsibilities of express companies as compared with those of motor companies ordinarily; especially to the fact that, in the transpor
 
 *163
 
 tation and delivery of such goods, these peculiar shipments may be better safeguarded by the employment of a single agency than by several. The applicant had enjoyed this peculiar service and had occupied this field in those communities for years: this service the protestants are now asking in their own behalf. Through no fault of the applicant the train service carrying its express shipments was discontinued. Many important shippers who in the past used applicant’s express service are asking its continuance through a grant of this application, and their evidence strongly fortifies applicant’s claim of convenience and necessity.
 

 Having regard for the various aspects this case assumes, we are of opinion that the commission erred in refusing plaintiff in error’s application.
 

 We regard the present application as one which concerns purely an intrastate route — one over which the commission has complete control. The question relating to the commission’s jurisdiction over intrastate and interstate routes and traffic was considered by this court in
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 121 Ohio St., 588, 170 N. E., 574.
 

 In regard to the tariff schedules filed, this record is somewhat indefinite. It is sufficient to state that the plaintiff in error, as a common carrier of intrastate shipments, like any other motor company, is required to file definite tariff schedules between the points of origin and destination which are within the state. If that has not been done, the commission may still require their filing under the provisions of Section 614-90
 
 et seq.,
 
 General Code.
 

 
 *164
 
 For the reasons stated, the order of the commission is reversed.
 

 Order reversed.
 

 Marshall, C. J., Kinkade, Robinson, J ones, Matthias, Day and Allen, JJ., concur.