Iíakt, J.
 

 These cases involve a review on appeal from orders of the Public Utilities Commission of Ohio, which granted in each case a certificate of public convenience and necessity to the Railway Express Agency, Inc., a motor transportation company, organized for and engaged in the business of receiving, transporting and delivering express matter throughout large areas of the United States, authorizing it to transport property in express service by motor vehicle on certain public highways of the state over regular
 
 *147
 
 routes between fixed termini and intermediate points. Tbe facts in these cases will be stated in the course of the opinion.
 

 The applications and the resulting orders granting the certificates of public convenience and necessity grew out of situations as follows:
 

 In case No. 27258, the application was for a certificate to transport property in intrastate commerce over public highways on a regular route between Toledo and Defiance. Prior to April 30, 1938, the express agency had employed railroad trains' operated by the Wabash Railroad Company to furnish express service at Defiance and the villages of Maumee, Waterville, Whitehouse, Liberty Center, Napoleon, Okolona, Florida, Jewell and Independence, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without facilities for transporting its express shipments directly to and from Defiance and the above named way points between Defiance and Toledo.
 

 In case No. 27259, the application was for a certificate to transport property in intrastate commerce over public highways on a regular route between Bellefontaine and Tiffin. Prior to July 1, 1938, the express agency had employed railroad trains operated by the C., C., C. & St. L. Railroad Company to furnish express service between Bellefontaine and Tiffin and to the villages of Berwick, Carey, Wharton, Forest, Patterson, Grant, Kenton, Belle Center, New Richland and Huntsville, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without facilities for transporting its express shipments directly to and from Bellefontaine and the way points between Bellefontaine and Tiffin.
 

 In case No. 27260, the application was for a certificate to transport property in intrastate commerce over public highways on a regular route between Newark
 
 *148
 
 and Willard. Prior to April 1, 1938, the express agency had employed railroad trains operated by The Baltimore & Ohio Railroad Company to furnish express service at Vanatta, St. Louisville, Utica, Mt. Vernon, Fredericktown, Ankenytown, Butler, Belle-ville , Lexington, Mansfield, Shelby, Plymouth and Willard, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without facilities' to transport its express shipments to and from the villages above mentioned.
 

 In case No. 27261, the application was for a certificate to transport property in intrastate commerce over public highways on a regular route between Hamilton and College Corners. Prior to June 4, 1938, the express agency had employed railroad trains operated by The Baltimore & Ohio Railroad Company to furnish express service between Hamilton and College Corners and the villages of Oxford, McGonigle and Millville, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without facilities for transporting its express shipments directly to and from Hamilton and way points between Hamilton and College Corners.
 

 In case No. 27262, the application was for a certificate to transport property in intrastate commerce over public highways on a regular route between Columbus and Blanchester. Prior to April 26,. 1938, the express agency had employed railroad trains operated by The Baltimore
 
 &
 
 Ohio Railroad Company to furnish express service at Briggsdale, Grove City, Pleasant Corners, Harrisburg, Orient, Derby, Era, Mt. Sterling, Madison Mills, Bloomingburg, Washington C. H., Jasper Mills, Sabina, Reeseville, Melvin, Wilmington and Midland City, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without direct facilities
 
 *149
 
 for transporting its express shipments to and from the points above named.
 

 In case No. 27263, the application was to amend certificate No. 5397 which authorized the transportation of property in intrastate commerce between West Unity and Van Wert, by extending the route from Van Wert to Middletown. Prior to February 1, 1938, the express agency had employed railroad trains operated by the Cincinnati Northern Railroad Company to furnish express service at the villages of Rockford, Celina, Coldwater, St. Henry, Burkettsville, New Weston, Ansonia, Greenville, Lewisburg, West Alexandria, Farmersville, Germantown, Carlisle and Franklin, all of which are located on the railroad. On the above date the railroad abandoned such train service leaving the applicant without direct facilities for transporting its express shipments to and from the way points above mentioned, all of which are between Van Wert and Middletown.
 

 It is conceded that the train service which had been heretofore used by the express agency in each case had been abandoned by the respective railroad cqmpanies with the consent and permission of the commission, and it is also conceded that the orders granted by the commission to the express agency gave it authority to operate motor vehicles to carry its property in express service only upon and over the regular routes in question in lieu of such train service.
 

 It appears from the record that the applicant for the certificates, the Railway Express Agency, Inc., is the only transportation agency engaged exclusively in express business in the villages and communities covered by the applications and the resultant orders; that if the express agency should not be permitted to operate its trucks over the respective routes as described in the applications and orders in these cases, the consignors' of expressage from the villages and communities affected would be obliged to employ other trans
 
 *150
 
 portation service to deliver shipments as freight to the nearest railroad express office to pnt such shipments into express service, would be obliged to pay both a freight transportation charge from point of delivery to the nearest train service express office, plus the express charge from that point to destination, would suffer delays of several hours in the shipments, and would lose, to some extent, the benefits which the public receives from the coordination of schedules which the express agency has' with the railroad companies. It is also apparent from the record that in ease of long hauls, other transportation companies or certificate holders would not be able to furnish a through continuous carrier transportation service to the point of destination of the shipment, without numerous transfers and consequent delays, but, on the other hand, the express agency, without a certificate, could not deliver expressage to the villages and communities herein named and heretofore served by it.
 

 The record also shows that none of the other motor transportation companies operating on these routes or a portion of the routes, owns or controls facilities which w'ould permit it to engage in a unified nationwide express transportation service, while the express agency is and has been for years engaged in furnishing such service to the communities in question.
 

 Upon the filing of the respective applications, a large number of motor transportation companies, holding certificates of convenience and necessity heretofore granted by the commission over the routes' or portions of the routes affected, filed protests with the commission opposing the issuing of the certificates requested by the Railway Express Agency, Inc., claiming that to grant such certificates would constitute an unreasonable and unlawful exercise of jurisdiction upon the part of the commission under the statutes of Ohio; and the commission having acted upon these applications in favor of the Railway Express Agency,
 
 *151
 
 Inc., these protestants' have become the appellants in this court. The question as to whether the commission exceeded its power in the granting of the respective certificates of convenience and necessity to the Railway Express Agency, Inc., is now before this court for decision.
 

 The sole broad issue, identical in each case, is whether the Public Utilities Commission had the power and authority to grant Railway Express Agency, Inc., a railroad and motor transportation company, a certificate of public convenience and necessity to operate as a motor transportation company over the public highways on regular routes in substitution for the facilities and transportation service which it had theretofore enjoyed in its' business through train service, because such train service had been discontinued and abandoned, notwithstanding other motor transportation companies were already operating a freight service under certificates of convenience and necessity over all or portions of such routes.
 

 It is fundamental that this court as' a reviewing court will not interfere with a finding and order of the Public Utilities Commission unless it appears from the record that such finding and order is manifestly against the weight' of the evidence, or is unreasonable or unlawful.
 
 Dutt, Recr.,
 
 v.
 
 Public Utilities Commission,
 
 132 Ohio St., 474, 9 N. E. (2d), 147;
 
 Gilbert, d. b. a. Dayton-Xenia-Wilmington Truck Line,
 
 v.
 
 Public Utilities Commission,
 
 131 Ohio St., 392, 3 N. E. (2d), 46;
 
 Continental Freight Forwarding Co.
 
 v.
 
 Public Utilities Commission,
 
 126 Ohio St., 16, 183 N. E., 790;
 
 Lykins
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 376, 154 N. E., 249;
 
 Cincinnati Traction Co.
 
 v.
 
 Public Utilities Commission,
 
 112 Ohio St., 699, 701, 148 N. E., 921;
 
 Village of St. Clairsville
 
 v.
 
 Public Utilities Commission,
 
 102 Ohio St., 574, 583, 132 N. E., 151;
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 92
 
 *152
 
 Ohio St., 362, 110 N. E., 952;
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 92 Ohio St., 9, 110 N. E., 521, L. R. A. 1918A, 267.
 

 The commission found in each of the cases at bar that the public convenience and necessity required the specialized service of Railway Express Agency, Inc., and that the protests of the protestants were not well made; and thereupon, the commission issued certificates of public convenience and necessity to Railway Express Agency, Inc., to establish and maintain a motor transportation company carrying property, as “express” upon the various routes described in the applications and orders. This court has reviewed the evidence adduced at the hearings before the commission on these applications and protests, and in the opinion of the court it cannot be said that the findings and orders of the commission are manifestly against the weight of the evidence or unreasonable. There is evidence tending to show that long before certificates of convenience and necessity had been issued to the protestants to operate a motor freight service over the several routes in question, the express agency had built up an exclusive express service and had served the villages and communities named in the respective applications by means of the employment of train service; that in order to serve and continue to serve such communities as it had heretofore done, it was necessary to institute such motor transportation service. The evidence discloses that for some period of time before the final hearings before the commission, the Railway Express Agency, Inc., had been operating its motor transportation express service over the routes in question on temporary certificates, and the evidence fails to show with any degree of impressiveness that the protestants during this time had suffered any substantial increased competition over that which existed when train service had been employed by the express agency. On the contrary, the evidence tends
 
 *153
 
 to show that the protestants are more interested in the hope of increased new business which would result from a discontinuance of service on the part of the express agency if the certificates were denied it, than in the. fear of new or increased competition if the certificates were allowed. The most insistent claim of the protestants is that if and when it is necessary to move this express business by truck, it is their business and that the express agency should be required to stay on the trains.
 

 The testimony also tended to show that the express agency has rendered and can render a more or less specialized service in the transportation of express matter because of the widespread, and at the same time unified, character of its business in that it is able to handle express matter through the same organization from the point of origin to the point of destination, and upon a coordination of schedules which would provide the shipper with more speedy service, all desirable considerations so far as the public service is concerned; and after all, the primary consideration in the granting of such certificates of convenience and necessity, is the best service to the public.
 
 McLain
 
 v.
 
 Public Utilities Commission,
 
 110 Ohio St., 1, 13, 143 N. E., 381;
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 370, 378, 175 N. E., 596.
 

 In passing, the protestants claim that while the commission limited the service to be offered by Railway Express Agency, Inc., to “express service,” yet, since there is no distinction between commodities which may be denominated either “freight” or “express,” and since the express service may ship all lands of freight under the name “express,” the limitation placed in the certificates is meaningless and would not prevent competition with other motor transportation companies. While this is true, it may be observed that express' rates are usually higher than freight rates, and this fact would tend to keep heavy
 
 *154
 
 commodities out of express service; Furthermore, the same condition obtained when express matter was or is carried by train service.
 

 It remains to be determined as to whether the commission exceeded its authority under the statutory limitations which apply to these cases. There can be no question that the applicant in this case is a motor transportation company, is subject to the jurisdiction of the Public Utilities Commission, and must obtain a certificate of public convenience and necessity before engaging in the transportation of express service by motor vehicle, which certificate can be granted by the commission only as provided by law.
 

 The protestants complain that in granting the certificates in question, the commission disregarded certain statutory limitations or requirements' relating thereto, and that the action of the commission in this respect was unlawful. To determine this question will require an examination of the pertinent sections of the General Code of Ohio. Section 614-83, General Code, as amended August 11, 1937, provides:
 

 “It is hereby declared to be the policy of this state to regulate transportation by common and contract carriers by motor vehicle in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical, and efficient service- by such motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices; improve the relations between, and coordinate transportation by and regulation of, such motor carriers and other carriers; develop and preserve a highway transportation system properly adapted to the needs of commerce and the state; and cooperate with the federal government and the several states, and the duly authorized officials thereof, and with any
 
 *155
 
 organization of motor carriers in the administration and enforcement of this chapter.”
 

 Section 614-87, General Code, among other things, provides:
 

 “Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought,, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate the commission shall not grant such certificate. * * * . On finding of the Public Utilities Commission that any motor transportation company does not give convenient and necessary service in accordance with the order of such commission such motor transportation company shall be given a reasonable time, not less than sixty days, to provide such service before any existing certificate is cancelled or a new one is granted over the route or for the territory mentioned in the finding and order of or hearing before the Public Utilities Commission.”
 

 Section 614-87&, General Code, adopted as of August 11,1937, provides:
 

 ‘ ‘ On finding of the Public Utilities Commission that any motor transportation company operating over an irregular route does not give adequate service, such motor transportation company shall likewise be given a reasonable time, not less than sixty days, in which to provide such service before any existing certificate is cancelled or a new one granted, over the irregular route or for the territory mentioned in the finding and order, or hearing before the commission. When an applicant seeks a certificate to serve points in a territory or on a route already served by a motor transportation company holding a certificate of public convenience and necessity, other than such applicant, the commission shall be without power to grant any such additional certificate authorizing the same kind and character of service, in whole or in part, already au
 
 *156
 
 thorized to be rendered by such other existing motor transportation company or companies, until such company or companies shall have been given such opportunity to provide such service found necessary, and shall have failed.or refused to furnish the same.”
 

 Section 8746-1, General Code, as amended August 7, 1937, provides as follows:
 

 “Any railroad company owning or operating a railroad in this state may own, control, operate or manage a motor vehicle or motor vehicles for the purpose of transporting persons or property, or both, upon the public highways for hire, subject to the provisions of the laws of this state regulating such transportation of persons or property, or both, as provided under Sections 614-84 to 614-102 inclusive of the General Code. Any railroad company may also own and operate equipment for and engage in the business of aerial transportation. - Any railroad company may acquire, own and hold capital stock and securities of corporations organized for or engaged in the business authorized in this act and may operate the properties, or any part or parts thereof, of such corporations, and may enter into working arrangements and agreements with such corporations.”
 

 The specific claim of the protestants is that, in granting the certificates in question, the commission disregarded the provisions of Sections 614-87 and 614-876, General Code, in so far as they provide, that when the commission finds that any motor transportation company is not giving adequate service, or that when an application is made for a new certificate to serve .points or on a route already served by a motor transportation company, in either case, such certificated transportation company shall be given a reasonable time, not less' than sixty days, to provide such service-before a new certificate shall b.e granted over the route or for the territory.
 

 It is apparent from reading the statutes above re
 
 *157
 
 ferred to that there are certain questions of fact to be determined by the Public Utilities Commission preliminary to the determination of the ultimate question as to whether a certificate of convenience and necessity should issue to any applicant. For instance, the commission, under favor of Section 614-83, General Code, is entitled to recognize and preserve the advantages of and foster sound economic conditions in such transportation and among such carriers in the public interest; to promote adequate and efficient service by such motor carriers, reasonable charges for such service, without unjust discrimination, undue preference, and unfair competition; to develop and preserve a highway transportation system adapted to the needs of commerce and the state; and in this connection the commission has the right to consider whether the applicant seeks a certificate to continue a special form of transportation service which it has already built up in the communities which it serves, and which it can now only carry on over the highways because other means of transportation have been closed to it, or, whether it is seeking a certificate to build up a new business in direct competition with other certificate holders. The commission is' also clothed with power to determine the fact as to whether the present certificate holders are able to provide the service required to the satisfaction of the commission; to take into consideration the kind of material or merchandise to be handled and transported by the applicant; to determine whether the service furnished by present certificate holders is adequate (Section 614-87, General Code); to determine whether the applicant seeks an additional certificate for authority to furnish the same kind and character of service as that already furnished by holders of certificates previously granted, or whether it seeks authority to conduct a service of a different kind and character from that conducted or given by such holders of previously granted certificates (Section 614-876,
 
 *158
 
 General Code). The commission is also entitled to take into consideration the nature and character of the applicant and its service as it relates to the public interest, in this case the fact that the applicant is an express agency authorized to conduct the business of an express agency having a distinct legal status as such, with certain incidents, obligations and responsibilities as well as certain advantages inuring to the people of the community in which it operates, all of which are not borne or furnished by the protestants as certificate holders doing a freight transportation business. Among such incidents the requirement to pay to . the Superintendent of Banks a fee for inspection and examination (Section 710-17, General Code); the requirement for reports of business, etc., to the tax ■ commission; the method of assessment of the business for taxation and the allocation and apportionment of tax payments to the municipalities and communities where its business is carried on (Sections 5457 to 5459 both inclusive, General Code). The commission-may also take into consideration the fact as to whether the denial of the certificate to the applicant would result in the taking away from the municipalities and communitiés affected, what is generally known in the business world as “express service,” as distinguished from “freight service.”
 

 The law not only permits but enjoins the commission, and not the court, to determine these questions of fact in the first instance and unless such determination indicates an abuse of discretion and quasi-judicial power on the part of the commission, the court should not interfere or reverse the findings of the commission.
 

 If the commission found, as it evidently did find, that the transportation service proposed to be offered by the applicant was of a specialized type or different in kind from that given by holders of previously granted certificates over the routes in question, and that such other certificate holders did not provide such
 
 *159
 
 specialized and different service as' required, then there is no statutory inhibition against the granting of such certificate to the applicant for such specialized and different service. Furthermore, in such case the commission is not required to give the holders of certificates, previously granted, time to provide such specialized and different service before granting the certificate to the applicant for such service, because it is only when the applicant seeks a certificate to render the same kind or character of service as that rendered by the holders of certificates previously granted that such time and opportunity is to be given to the latter to provide necessary service (¡Section 614-87&, General Code). The court is of the opinion that the commission was justified from the record ,in making the order which it did make in these cases, and in so doing did not contravene any legal or statutory requirement.
 

 Both the applicant and the protestants make some contentions that their respective claims have support in the former decisions of this court, and the protestants claim that there is a conflict in these cases so far as they are applicable to the issues' in this case. It is also the claim of the protestants that the cases which support the holding of the commission and which were specifically relied upon by the commission in granting the orders in these cases, are rendered obsolete by legislation subsequent in point of time, which was not taken into consideration by the commission. In view of this claim the court has made a reexamination of these cases.
 

 In
 
 Railway Express Agency, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 159, 174 N. E., 356, the so-called
 
 Canton-Delroy case,
 
 the court found that the applicant sought the certificate for the purpose of continuing the same service it had theretofore given the public by railroad train transportation, and proposed to confine its service to goods delivered to it for express delivery. The court, in reversing the commission
 
 *160
 
 which had denied the certificate, in the course of its opinion says: “The peculiar character of express transportation and service, in our opinion, as distinguished from that rendered by the usual motor companies, should be taken into consideration. The former, by its close alliance with train schedules, is, we think, better equipped for giving through service to shipper and consignee in intra and interstate transportation, especially the latter.”
 

 The case of
 
 Gilbert, d. b. a. Dayton-Xenia-Wilmington Truck Line,
 
 v.
 
 Public Utilities Commission, supra,
 
 involved a situation where the commission granted a certificate to extend the service in lieu of that which had been carried on by the applicant over two connecting interurban railroad lines between Springfield and Xenia, and between Xenia and Dayton, owned by the same company, at a time when the interurban service was proposed to be abandoned. The court found that the certificate was properly granted in view of the long-time operation of the two affiliated electric lines between Dayton and Xenia, and Xenia and Springfield, and their relationship to the applicant transportation company in carrying on the service as the traction lines one after the other were abandoned; and in view of the fact that the applicant was not proposing to' organize and build up a new and independent project, but an improved and modern substitute over the former electric service, over substantially the same route.
 

 In the case of
 
 Commercial Motor Freight, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 133 Ohio St., 75, 11 N. E. (2d), 701, the commission granted the applicant which already had*a certificate for transportation of property between Rittman and Wadsworth, an amendment of its certificate permitting it to extend its service from Wadsworth to .Barberton, limited in such extended service to the carriage of property in express service. Here again, the reason the commission granted the extension for such limited service was that the Erie
 
 *161
 
 Railroad Company which had carried the applicant’s express service with trains stopping at Rittman, Wads-worth and Barberton, discontinued stopping- such trains at Wadsworth, whereupon the commission granted the applicant its original certificate to operate a truck from Rittman to Wadsworth “to handle express shipments originating at and destined for those points.” Subsequently the railroad ceased stopping its trains at Barberton whereupon the- commission granted the applicant an amended certificate to permit it to continue its service in lieu of- the train service into Barberton. This court held that the amended certificate was properly granted. The cases above mentioned are most typical of the cases at bar.
 

 We will briefly review the cases relied upon by the protestants to support their contention in these cases. In the case of
 
 Lake Shore Electric Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 311, 154 N. E., 239, the commission granted a certificate to the applicant “to operate a motor transportation company, carrying passengers as a common carrier, upon irregular routes over all public highways, roads, and streets in the state of Ohio. * * *” Counsel for applicant sought to sustain the action of the commission by claiming that the service proposed to be rendered was of an entirely different kind and character from that rendered- by other transportation companies and .that there was therefore no inhibition in the statute. The court, however, found that the proposed service was a new enterprise, and while it might be essentially different in its conveniences, nevertheless it called for a transportation of persons in direct competition with the protestants in that case. The court in the course of its opinion, reversing the order of the commission, said: “Slight additional conveniences to certain persons' or classes of persons, which are admitted to be of a casual nature and as yet wholly undeveloped, should
 
 *162
 
 not be permitted to disarrange and possibly destroy other valuable existing transportation facilities.”
 

 The case of
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 370, 175 N. E., 596, is one where the railroad company applied to the commission for a certificate to permit it to operate motor vehicles for the transportation of freight over a regular'route between Cleveland, Toledo and Danbury, as a supplemental service, employing trucks to operate between certain stations on its line, picking up and delivering at such stations shipments of less than carload lots. The company had first attempted such service without a certificate of convenience and necessity and was required to desist
 
 (New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 121 Ohio St., 588, 170 N. E., 574), whereupon it applied for such a certificate, but the commission denied it. The court in this' case, in affirming the order of the commission, held that the applicant was engaged in the same kind of freight service as other transportation companies on the same route, and that the granting of such certificate was not warranted unless it appeared that the public convenience and necessity required the proposed service; that other motor transportation companies operating on the same routes were not rendering adequate service, or that they were not able and willing to do so. There was no claim in this case that the proposed freight service would not be identical in ldnd and character with that already provided by the other motor transportation companies, and under these circumstances the certificate was properly denied. The three cases last above named have factual differences from the cases at bar and are not determinative of the issues therein involved.
 

 We do not think there is any substantial inconsistency in the former holdings of this court with the position now taken by it, when the facts in each case are taken into consideration. Nor is the court of
 
 *163
 
 opinion that more recent legislation has' materially affected the authority of the commission so as to make its action in these cases illegal or unlawful.
 

 The court is of the opinion that if the public convenience and necessity is being adequately served as to any particular type of transportation service by motor transportation companies under certificates already granted, or such transportation companies are .able and willing, within the time prescribed by the commission, to provide such particular type of service as required, another certificate of public convenience and necessity should not be issued to an applicant therefor. (Paragraph three of the syllabus in
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Com
 
 mission, 123 Ohio St., 370, approved.) But if the public convenience and necessity demands a specialized type of motor transportation service of a kind and character different from that afforded by motor transportation companies already operating under certificates over the same route, a certificate of public convenience and necessity may issue to a motor transportation company limited to such specialized service, without affording such other motor transportation companies an opportunity to furnish such specialized and limited service, and especially so if the specialized or limited service has been organized and built up by the applicant through the means of other transportation facilities, the us:e of which have been closed to it by abandonment.
 

 'The orders of the Public Utilities Commission are affirmed.
 

 Orders affirmed.
 

 Weygandt, C. J., Zimmerman, Williams and Matthias, JJ., concur.
 

 Myers, J., concurs in paragraphs one, two and three of the syllabus, but dissents from the judgments.