Weygandt, C. J.
 

 The first question presented by the appellants for consideration by this court is whether the proposed operation of the Pennsylvania Truck Lines,. Inc., is that of a “motor transportation company” or “common carrier by motor vehicle” as defined by Section 614-84 (a), General Code, which reads in part as follows:
 

 “The term ‘motor transportation company,’ or ‘common carrier by motor vehicle,’ when used in this chapter, shall include, and * * * shall apply to every corporation, company, * * * or copartnership * * * when engaged, or proposing to engage, in the business of transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, whether directly or by lease or other arrangement, for the public in general, in or by motor propelled vehicles of any kind whatsoever, * * # over any public highway in this state * *
 

 The applicant, the Pennsylvania Truck Lines, Inc., has entered into a contract with the Pennsylvania Railroad Company which also owns the stock of the former company. This contract is unassignable except with the consent of the railroad company and provides that the trucking company as an independent contractor shall accept and transport from and to the enumerated
 
 stations
 
 all so-called less-than-earload quantities of freight offered to it by the railroad company. The motor vehicles employed im this transportation service are owned by the trucking company and are not to be rented or leased to the railroad company but are to be operated, maintained and insured by the trucking company at its own expense. For this service the railroad company agrees to pay the trucking company a specified sum per month plus an.-additional
 
 *560
 
 „amount for mileage traveled. The contract “shall continue in effect subject to termination upon thirty (30) clays’ written notice from either party to the other; provided, that either party may' terminate this agreement at any time immediately upon written notice to the other party by reason of any1 adverse legislation, order or rule of any public authority; and provided further, that railroad, because of its common carrier obligations, may terminate this agreement at any time immediately upon the giving of written notice to trucker in the event that trucker shall fail to perform in a satisfactory manner any of its obligations under this agreement.”
 

 In their briefs counsel cite and discuss at length the decisions of this court in the three cases of
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 121 Ohio St., 588, 170 N. E., 574;
 
 New York Central Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 123 Ohio St., 370, 175 N. E., 596; and
 
 Lake Motor Freight Line, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 126 Ohio St., 419, 185 N. E., 529.
 

 In the second paragraph of the syllabus of the first of the three cited cases this court held that where “a common carrier railroad company owns, controls, operates or manages any motor-propelled vehicle not usually operated on or over rails, used in the business of transportation of persons or property or both as a common carrier for hire over any public highway in this state, this constitutes such railroad company a motor transportation company.” In contrast the instant case involves the certification of a trucking, company and not a railroad. It is true that in the cited case a trucking company .was doing the hauling, but that company was operating under a contract which lodged complete control of both management and operation in the railroad company alone. In the instant case the contract expressly provides that the trucking
 
 *561
 
 .company shall be “wholly independent” and that the railroad company shall not “supervise, direct or control the manner of the rendering of any service in connection with any work or other feature covered by this or prior agreements * *
 

 The second cited case involved the same railroad company as the first. The chief difference between the two cases is that in the first it was held simply that the railroad company could not continue to operate the trucking service without a certificate of convenience and necessity; and in the second case the railroad company itself applied for such a certificate but this was denied on the three grounds that.no proper tariffs had been filed by the applicant as required by law and the rules and regulations of the commission, that the evidence did not show public convenience and necessity for the proposed service, and that the evidence did not show the existing motor transportation companies were not rendering adequate and convenient service.
 

 The third cited case is the one upon which the appellee relies. There, as in the instant case, the applicant was a trucking company that had entered into a contract with the railroad company for motor transportation of less-tlian-carload quantities of freight from and to the latter’s stations and under the latter’s tariffs and bills of lading exclusively. The Public Utilities Commission granted the application, and that order was affirmed by this court by a divided vote.
 

 But it is important to observe that subsequent to the decisions in those cases Section 8746-1, General Code, was enacted. In part it reads as follows:
 

 “Any railroad company may acquire, own and hold capital stock and securities of corporations organized for or engaged in the businesses authorized in this act and may operate the properties, or any part or parts thereof, of such corporations, and may enter into
 
 *562
 
 working arrangements and agreements with such corporations. ’ ’
 

 Thus it is apparent that this new statute has expressly authorized a railroad company to do the things that have been done by the Pennsylvania Railroad Company, namely, own capital stock of a motor transportation company and enter into a working arrangement 'and agreement with such corporation; and there is nothing in the statute to indicate an intention on the part of the General Assembly to the effect that under such circumstances the railroad necessarily becomes a motor transportation company or that the contracting motor transportation company thereby loses its character as a common carrier, as contended by the appellants. It, of course, is true that the motor transportation company is hauling for the railroad, but the fact remains that at the same time it is engaged in public transportation also. The freight transported is the property of neither the railroad company nor the motor transportation company but belongs to members of the public by whom it is taken to one of the enumerated stations to be hauled to another.
 

 Incidentally, as stated by the Public Utilities Commission, one of the appellant protestants itself has been operating for some time under a similar certificate approving a similar contract with the Pennsylvania Railroad Company for the hauling of less-than-carload quantities of freight over a different route in lilis state.
 

 Furthermore, it is interesting to note that the Pennsylvania Truck Lines, Inc., already has been granted a certificate by the Interstate Commerce Commission authorizing it to render the same service as to interstate freight shipments for the same railroad over the same route for which an intrastate certificate is now asked; and the provisions of the federal statute are not as broad as those of the state act, as is indicated
 
 *563
 
 by the following language of Part II, Section 203, paragraph 14 of the Interstate Commerce Act (Title 49, Chapter 8, Section 303, paragraph 14, U. S. Code):
 

 1 ‘ The term ‘ common carrier by motor vehicle ’ means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, except transportation by motor vehicle by an express company to the extent that such transportation has heretofore been subject to Chapter 1 * *
 

 According to the record, 86 per cent of the total number of shipments is interstate and 14 per cent intrastate. It would be an anomaly if the trucking company were held to be a common carrier by motor vehicle as to the 86 per cent but not as to the 14 per cent.
 

 The second complaint by the appellants is that the' evidence does not show public convenience and necessity for the proposed service. However, a study of the record fails to substantiate this contention. There were eight shippers among the witnesses. It was stated in part that the existing service for the transportation of less-than-carload quantities of freight is inadequate, that the proposed service will shorten the shipping time 24 to 48 hours, and that none of the protesting trucking companies is now serving the same route and stations. In its opinion appears the following comment by the Public Utilities Commission:
 

 “It is shown by the testimony of record that the granting of this application will result in certain operating economies to the rail carrier, will release railroad equipment for other service, will expedite the movement of less-tlian-carload freight to a substantial degree, and will preserve an existing mode of transportation for those of the public who desire to avail themselves of this facility.
 

 
 *564
 
 “Tliore is no substantial complaint or showing in the record that existing motor transportation companies serving in the territory involved will in any manner be injured by the granting of this application — restricted as it will be. There is no doubt that the benefits above outlined will result from the proposed service. ’ ’
 

 The only remaining complaint requiring comment is that arising from the failure of the Public Utilities Commission to comply with the provisions of Section (514-87, General'Code, by giving existing carriers a period of not less than 60 days in which to provide the service before the new certificate of convenience and necessity was granted. This court frequently has held that if a different and specialized or limited transportation service is required and proposed, a new certificate authorizing such service may be granted without first affording existing motor transportation companies an opportunity to provide such service. In the fourth paragraph of the syllabus in the case of
 
 H. & K. Motor Transportation, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 135 Ohio St., 145, 19 N. E. (2d), 956, this rule was stated as follows:
 

 “Where the public convenience and necessity demand a specialized type of motor transportation service of a kind and character different from that afforded by motor transportation companies already operating under certificates over the same route, a certificate of public convenience and necessity may issue to a motor transportation company limited to such specialized service without first affording such other motor transportation companies an opportunity to furnish such specialized and limited service * *
 

 In view of the facts disclosed by the record in this case the order of the Public Utilities Commission is
 
 *565
 
 neither unreasonable nor unlawful and must be affirmed.
 

 Order affirmed.
 

 Zimmerman, Bell, Williams, Turner, Matthias and Hart, JJ., concur.