Stewart, J.
 

 As was said in the first paragraph of the syllabus in the case of
 
 H. & K. Motor Transportation, Inc.,
 
 v.
 
 Public Utilities Commission,
 
 135 Ohio St., 145, 19 N. E. (2d), 956, “the Supreme Court, as a reviewing court, will not interfere with a finding and order of the Public Utilities Commission, unless it appears from the record that such finding and order is manifestly against the weight of the evidence, or is unreasonable or unlawful.”
 

 In the instant case, there is ample evidence to demonstrate that the service to be performed by applicant for the shipper is of such a special nature that it justifies a contract with a private carrier in order to have it performed in a businesslike and sensible manner; and that the finding of the attorney examiner adopted by the commission, that the granting of the application for a certificate as a contract carrier is consistent with the public interest, accords with the evidence.
 

 The evidence justifies the conclusions that not only will the business of the shipper be more expeditiously performed by applicant as a contract carrier, but that the granting of the application will not result in
 
 *394
 
 a greater crowding of the highways with big trucks hauling steel than would be the case if the application were not granted, for the reason that in the latter event the shipper would be compelled to use trucks of its own. The crowding of the highways with enormous trucks carrying steel and other heavy cumbersome commodities is a matter of public concern.
 

 In the instant case, the evidence fully sustains the proposition that such service as the shipper requires could not feasibly be performed by the protestants or common carrier trucks. Indeed, the protestants did not strenuously urge that the service required by the shipper was not a subject for contract carrier service but they bottomed their case upon the proposition that rule No. 12 of Administrative Order No. 125 of the commission, which rule was effective October 1, 1940, is illegal in that its terms are prohibited by state law.
 

 Eule No. 12 reads as follows:
 

 “Dual operations. No person, firm or corporation shall secure, hold, or control, both a certificate and a permit, nor shall a common carrier by any means or anywhere hold, own, or control a permit, either directly or indirectly, unless the commission after hearing shall find that the securing, holding, or controlling, of said permit is consistent with the public interest.”
 

 As we have said, the attorney examiner and the commission found that the granting of applicant’s application is consistent with the public interest, and, since that finding was supported by the evidence, there was no error in granting the application, if rule No. 12 is valid. The predecessor of rule No. 12 was Eule No. 18 of Administrative Order No. 116, which was cancelled when rule No. 12 was adopted and placed in effect.
 

 Euie No. 18 provided:
 

 “No motor transportation company or other com
 
 *395
 
 mon carrier may secure a private motor carrier permit.”
 

 It is claimed by protestants that because this court approved rule No. 18 the commission was not legally justified in promulgating rule No. 12.
 

 In the case of
 
 Mahoning Express Co.
 
 v.
 
 Public Utilities Commission,
 
 128 Ohio St., 369, 191 N. E., 3, the syllabus reads:
 

 “Rule 18 of Administrative Order Number 116 of The Public Utilities Commission of Ohio, providing that no motor transportation company or other common carrier may secure a private motor carrier permit, is a valid exercise of the powers conferred by statute, and is neither unreasonable nor unconstitutional.”
 

 After pointing out that the commission has rule-making power under Sections 614-86, 614-105 and 614-109, General Code, Chief Justice Weygandt said in the opinion:
 

 “Is rule 18 unreasonable? Were this court to so hold, or if each transportation company were permitted to ambidextrously separate its business and theoretically operate both as a common and as a private carrier, there would seem to be little possibility of effectuating the regulation the Legislature intended to provide.”
 

 It will be observed that there was no question in that case with reference to a conflict between rule 18 and the state statutes, as is claimed in the instant case with reference to rule 12. The language used by Chief Justice Weygandt constituted sound reasoning at the time of its use and as a general proposition still does. However, the commission, in its experience, found that there were special cases where it might be advisable to grant a permit as a contract carrier to a certificated motor common carrier and, therefore, rule 12 was adopted pursuant to the commission’s rule-making power.
 

 
 *396
 
 The main contention of protestants is that the commission had no power to adopt rule 12 which gave itself power to grant a permit as a contract carrier to a certificated motor common carrier when the granting of such permit is consistent with the public interest. Protestants argue that under the law no one can be a holder of both a certificate and a permit. Protestants urge that by Section 614-86, General Code, the commission is given power to prescribe rules and regulations affecting motor transportation companies (common carriers) whereas under Section 614-105, General Code, the commission is given power to prescribe rules affecting private motor carriers and it is contended that, since the commission can exercise only the authority expressly conferred upon it by statute, it cannot make a valid rule which would allow the same person to have both a motor transportation certificate and a private contract carrier permit.
 

 Protestants contend that applicant is an Ohio corporation holding certificate of public convenience and necessity No. 1141 and is a public utility, a motor transportation company and a common carrier by motor as defined in Sections 614-2, 614-2a and 614-84, General Code, and that it is therefore denied the right to become a private motor carrier under Sections 614-103 and 614-104, General Code.
 

 Section 614-2, General Code, defines “motor transportation company” as follows:
 

 “Any person, * * * company or corporation, where-ever organized or incorporated * * *
 

 “When engaged in the business of carrying and transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, in or by motor propelled vehicles of any kind whatsoever, including trailers for the public in general, over any public street, road or highway in this state, except otherwise provided in Section 614-84, is
 
 *397
 
 a motor transportation company * *
 

 Section 614-2a, General Code, provides:
 

 “The term ‘public utility’ as used in this act, shall mean and include every corporation * * * defined in the next preceding section * * * [Section 614-2].” .
 

 Section 614-84, General Code, defines “motor transportation company,” a second time, as follows:
 

 “(a) The term ‘motor transportation company,’ or ‘common carrier by motor vehicle,’ when used in this chapter, shall include, and all provisions of law regulating the business of motor transportation, the context thereof notwithstanding, shall apply to every corporation * * * when engaged, or proposing to engage, in the business of transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, * *
 
 *
 
 for the public in general, in or by motor propelled vehicles of any kind whatsoever, * * * over any public highway in this state * *
 

 Protestants urge that by reason of the foregoing definitions and the fact that the General Assembly, in Section 614-103, General Code, defined the terms, “private motor carrier,” or, “contract carrier- by motor vehicle,” as * * every corporation * * * not included in the definition under Section 614-84 of the General Code, * * the- term, “motor transportation company,” excludes “private motor carrier” and, therefore, common carrier motor transportation companies may not carry on the dual operations provided in rule 12,
 
 supra. ■
 

 Section 614-109, General Code, providing for the granting of permits to private motor carriers contains the language:
 

 “No corporation * * * shall hold, operate, manage or control more than one permit.”
 

 No similar provisions, relevant to motor transportation companies, appear, and in Section 614-87, Gen
 
 *398
 
 eral Code, the word, “certificate,” is used many times. Section 614-104, General Code, provides:
 

 “No private motor carrier as defined in the preceding section shall operate any motor vehicle for the transportation of persons or property, or both, for hire, on any public highway in this state except in accordance with the provisions of this chapter. And no such private motor carrier shall continue or commence its operation as such in this state without first obtaining a permit from the Public Utilities Commission as provided in this chapter.”
 

 From the various statutes which have been quoted and which appear in Chapter 1, Division II, Title III, Part First of the General Code, which contains the Ohio motor carrier statutes, a certificated motor transportation company or common carrier by motor vehicle as defined in Section 614-84 is something entirely different from a private motor carrier or a contract carrier by motor vehicle as defined in Section 614-103. However, in no place in the statutes is there any prohibition against one person being both a common carrier and a contract carrier. Under a certificate as a common carrier the carrier must come within the definitions of Sections 614-2,
 
 614-2a
 
 and 614-84, and as a contract carrier he must come within the definitions under Section 614-103 and the provisions of Section 614-104.
 

 The statutes provide different qualifications and definitions with respect to becoming an attorney and a physician, and yet there is no prohibition against the same person qualifying for both professions.
 

 The language of Chief Justice Weygandt, quoted supra, does not mean that it was unlawful for the commission to adopt rule 12 which enabled it to vest a dual character upon a transportation company if consistent with the public interest. If the
 
 Mahoning Express Co. ease
 
 has any bearing upon the instant
 
 *399
 
 case it is to the effect that the commission should be very chary about issuing a permit to a certificated company and should be very sure that rule 12 is utilized consistently with the public interest.
 

 In 1935, Congress in Section 210, Part II of the Interstate Commerce Act (Section 310, Title 49, U. S. Code), provided that, if the Interstate Commerce Commissionj for good cause shown, finds that both a certificate and a permit may be held consistently with the public interest and with the national transportation policy, one person can hold both a certificate and a permit. It is common knowledge that interstate motor carriers do operate through this state and the Interstate Commerce Commission can give them dual authority when found consistent with the public interest.
 

 Section 614-83, General Code, which is the declaration of policy of this state in the regulation of transportation by common and contract carrier by motor vehicles, provides that there shall be co-operation with the federal government and the several states. The law with reference to interstate carriers furnishes another reason for the propriety of rule 12.
 

 Since we hold that rule 12 is not prohibited by the law of the state, and that the rule is applicable only where the commission after hearing shall find that the holding of a permit by a certificated common carrier is consistent with the public interest, and since the instant case furnishes an exceptional example for the application of the rule, the order of the commission is not. unreasonable or unlawful, and is affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Turner, JJ., concur.