Stewart, J.
In the instant cases it is obvious that the transportation services authorized by the certificates issued by the commission are specialized or limited, and new certificates of public convenience and necessity authorizing such service may be granted by the commission without first giving existing motor transportation companies a period of not less than 60 days in which to provide such sérvice, under Section *447 614-87, General Code. Cleveland, Columbus & Cincinnati Highways, Inc., v. Public Utilities Commission 144 Ohio St., 557, 60 N. E. (2d), 166; Norwalk Truck Lines Co. v. Public Utilities Commission, 148 Ohio St., 247, 74 N. E. (2d), 328.
There is no doubt of the authority to issue to a railroad company a certificate of public convenience and necessity authorizing such company to transport property as a common carrier by motor vehicle. Section 8746-1, General Code. Cleveland, Columbus & Cincinnati Highways, Inc., v. Public Utilities Commission, supra; Norwalk Truck Lines Co. v. Public Utilities Commission, supra.
In cause No. 31956, applicant, in its substituted service, is restricted in that it is not permitted to serve any point not a station on its rail lines and shipments are limited to those which it receives from or delivers to the railroad under through bills of lading.
In cause No. 31957, not only are the above restrictions contained in the certificate for substituted service, but, under the key point system of restriction, applicant may not carry freight by motor between key points or through, to or from more than one of such points.
These various restrictions demonstrate that the service for l.c.l. shipments authorized in the two certificates constitutes different and specialized or limited transportation. Indeed, protestants in argument concede this point and have no objection to the issuance of the certificates involved in the instant cases except that in each certificate there should be a further restriction, to wit, “all shipments transported shall receive a prior or subsequent movement by rail in rail cars under a through bill of lading. ’ ’
That provision was in the Interstate Commerce Commission certificate granted to applicant for its Alliance branch, but it is of no practical utility because all ap *448 plicant’s interstate commerce on its Alliance branch must originate in Cleveland and, therefore, is transported by rail to Alliance, where it is further transported by rail in carload lots and by truck in less than carload lots.
If such a restriction for which protestants contend were put into the Alliance-branch certificate, it would defeat the whole object of the substituted service. The result would be that peddler cars would have to be utilized by applicant for the movement of l.c.l. freight on the Alliance branch, which would destroy the economies of motor freight operation as well as bring back the delay and inconveniences complained of by shippers and receivers. As a matter of fact, according to the attorney examiner’s report, only 31 per cent of the l.c.l. shipments handled by applicant on the Alliance branch are intrastate, and of this amount the proportion of intrastate shipments moving entirely on the Alliance branch without a previous rail movement consists of a total of not over 10 or 12 shipments per year, which is less than 1 per cent of the total l.c.l. shipments on the branch.
In cause No. 31956, rather than the order of the commission being unreasonable and unlawful in issuing its certificate without the prior-or-subsequent-movement-by-rail provision, it seems to us that it would be unreasonable to put such provision into the certificate, applicable to such a trifling amount of freight handling, and thus seriously detract from the benefits of the substituted motor transport service, not only as to applicant but to the shippers and receivers on the Alliance branch.
In the case of Cleveland, Columbus & Cincinnati Highways, Inc., v. Public Utilities Commission, supra, the order of the commission, which was affirmed by this court, was the granting of a motor transportation certificate of convenience and necessity to a subsidiary *449 corporation of the Pennsylvania Railroad Company. Such order restricted operation to l.c.l. freight between railroad stations of the railroad company as follows: “Restricted to points which are stations of the Pennsylvania Railroad Company and to freight moving under bills of lading and tariffs of said railroad.” The restriction contained no prior-or-subsequent-rail-haul provision. It is true that in the service provided there was no motor transport hauling without a prior or subsequent rail movement. However, there was no prohibition against it.
In Section 614-83, General Code, which discloses the policy of this state in the regulation of transportation by common and contract carriers by motor vehicle, it is provided that there should be co-operation with the federal government and the several states. Although the Interstate Commerce Commission certificate to applicant with reference to its Alliance division did contain a prior-or-subsequent-rail-movement provision, no-such provision was in the Interstate Commerce Commission certificate to applicant in relation to its Big Pour system. Instead, there was the key point restriction just as in the certificate the issuance of which forms the basis of the appeal in cause No. 31957 where-the amount of motor transport hauling by applicant, without prior or subsequent rail movement is trifling.. A study indicates that of all the shipments on the 850' miles of applicant’s Ohio Big Pour system, 12.5 per cent are intrastate and only approximately 2.2 per cent of the total shipments or about 3% tons per day will receive no prior or subsequent rail movement.
Protestants contend that, even though shipments without prior or subsequent rail movement in both the instant cases may be insignificant, nevertheless the certificates open the door to expanded movements of that kind. That, however, is a matter for the future and it would be unreasonable to take away the economies *450 and advantages to both applicant and its shippers and receivers by compelling the imposition of prior-or-subsequent-rail-movement conditions to the motor transport service of applicant.
L.c.l. shipments from and to the smaller communities along applicant’s rail lines have heretofore been accomplished by using peddler freight cars which, as has been said, constituted a costly, inefficient and delayed operation and we cannot see that the commission violated any rule of reason or any law in granting the certificates in the instant cases for the improved motor transport service with the restrictions which the issued certificates contain.
It should be remembered that the applicant was serving all the communities concerned in the instant cases years before there was any such thing as motor transport service, and, although motor transport service is highly desirable and beneficial when carried on in the public interest, the benefits of it should be enjoyed by railroads when those benefits can be ordered without violating the law and where they are in the public interest. It is to the public interest that railroads be afforded reasonable and lawful opportunities to effect economies and to improve service to shippers and receivers along railroad lines.
We hold that the orders of the commission in the instant cases are not unreasonable or unlawful, and they are affirmed.

Orders affirmed.

Weygandt, C. J’., Matthias, Hart, Zimmerman, Turner and Taft, JJ., concur.