ATLANTIC GREYHOUND CORPORATION, APPLICATION OF, IN RE.

Public Utilities Commission.

No. 27362.   Decided May 9, 1958.

Mr. D. H. Armstrong, for applicant.
Mr. Charles S. Gillispie, for Railway Express Agency, Inc., Protestant.

NATURE OF THE APPLICATION:
Exhibit 4-B of the application states the following:

"Applicant requests addition to its present authority that it be permitted to transport baggage of passengers, express, mail and newspapers in the same vehicle with passengers."

The applicant's counsel stated that the applicant did not desire to "transport the commodities between the points where we have no authority to transport passengers." (R. 5.)

Counsel for the applicant also stated that the applicant has been operating over these routes transporting the involved commodities for a number of years and in this application seeks to obtain authority from this Commission to do what it has already been doing without authority from this Commission.

Counsel for the protestant stated that his company was protesting the handling of express between the following points: Columbus, Cincinnati, Chillicothe, Waverly, Portsmouth, Jackson, Ironton, Pomeroy, Bellaire, Marietta, and Ripley. (R. p. 6.)

SUMMARY OF THE EVIDENCE:

Witness Arnold Kincaid, Assistant Traffic Manager of the Atlantic Greyhound Corporation, stated that he was familiar with the entire operation of the Atlantic Greyhound Corporation.

The witness stated that the mail referred to in the application was not U. S. Government mail but rather private mail shipped between two parties and not handled by the U. S. Government.

The witness stated that his company had filed tariffs for the transportation of property as far back as 1938 and probably further back than that. The witness stated that to his knowledge this Commission had never declined to accept a tariff filed by his Company. (R. p. 12.)

The witness then described the various points which his company served in Ohio under this certificate as well as the schedules of such operations. The witness was cross-examined extensively as to the operation of his company under this certificate, specifically as to points served and the hours of service.

The witness also stated that with respect to size limitations of packages shipped by his company that the size limit was '24 x 24 x 45" with certain exceptions. There are also certain items which his company restricted itself against hauling under its tariff. The witness stated that his company also required certain commodities to be specially packed. These

requirements are set forth in his tariff on file with this Commission.

On further cross-examination the witness stated that his company was seeking authority from this Commission "to handle any type of property." (R. p. 34.) There would be nothing to prevent the applicant from enlarging its authority by filing a new tariff eliminating the size restrictions. The witness stated that generally speaking express parcels were put in the baggage compartment of the bus.

The witness stated that he did not know whether in the future his company would remove some of the seats in the bus in order to carry more express. The witness stated that he had heard that Great Lakes Greyhound had removed seats from a bus in order to enlarge its express carrying capacity.

The witness stated that his company presently had pick-up and delivery service at Columbus, Cincinnati, and Portsmouth. Such service is done under a contract with local cartage companies. Pick-up and delivery service is provided for by the company's tariff on file with this Commission.

Witness Joseph Thompson, Mayor of the Village of Piketon, Ohio, stated that he was a retail pharmacist. He stated that he acted as commission agent for the Greyhound Corp. The witness stated that as a druggist he had occasion to use the applicant's express service for the delivery of drugs and medicines. These shipments originate at Columbus, Chillicothe, and sometimes Cincinnati.

The witness stated that Railway Express Agency had a station at Piketon. The witness stated that he used the Railway Express on shipments originating out of the State. The witness had never used the protestant's service in intrastate shipments. The witness stated that he averaged three shipments per week by bus.

Witness H. R. Baker stated that he was employed at a wholesale distributing house in Portsmouth, Ohio. The name of his employer is Gilbert's, Inc.

The witness stated that in addition to wholesaling groceries his company engaged in the sale of building materials, floor coverings, and certain hardware items. The groceries which his company handled were canned goods, fresh fruit, and vegetables, frozen fish and fresh oysters.

The witness stated that his company shipped to Manchester, Highland, Wellston, Bellaire, and Pomeroy. The witness stated that his company used the public transportation in inbound shipments and that they used their own trucks primarily for outbound shipments.

The witness stated that his company used the applicant's services in forwarding mail packages to its employees and customers informing them of stotck changes and price changes. This form of mail is not the mail that is handled by the U. S. Mail service but rather is handled entirely by the applicant. The sender cancels the U. S. Government stamps on the envelope. This service is used on Monday, Tuesday, Wednesday, and Thursday of each week that doesn't have a holiday. (R. p. 55.)

Upon cross-examination the witness stated that his company made shipments to Pomeroy, Ripley, Manchester, Russellville and Decatur.

The witness also stated that his company has used the motor service of Commercial Motor Freight, Braddock Motor Freight, Reinhardt Motor Freight and Railway Express. The witness also stated that shipments were made to Gallipolis, Ironton and Chesapeake.

Witness Roy Dearing stated that he was a wholesale distributor for the Serve Yourself Hosiery Company and that he lived near Jackson, Ohio. He stated he used the applicant's service for inbound shipments which come from Akron, Ohio. The witness stated that he received a shipment at least once a week and sometimes twice a week. All of these shipments come by Greyhound Bus. The witness stated that he received over-night service from Akron.

Upon cross-examination the witness stated that he had never used Railway Express Service.

Witness H. Holthaus stated that he was a parts wholesaler for Chrysler Corp. and that he was located at Cincinnati, Ohio; that his company utilized the services of United Parcel Service, Railway Express, motor common carriers, and the applicant in the transportation of automobile parts. The witness stated that his company had customers at the following towns: Amelia, Bethel, Ripley, Higgensport, and Aberdeen. (R. p. 72.) The

witness stated that his company also had two accounts in Portsmouth, Ohio. Another account was located at West Union and still another account was located at New Richmond and Georgetown.

Upon cross-examination the witness stated that his company picked up shipments and delivered shipments to the applicant's bus station. The witness stated that his company also occasionally got a shipment of auto parts from Columbus, Ohio.

On redirect examination the witness stated that the reason his company would call the applicant for emergency shipments was because it would only take two or three hours to make the delivery to a customer.

Witness George H. Kessen, a wholesale florist located at Cincinnati, Ohio stated that he had both incoming and outgoing freight packages; that his company would make shipments from Cincinnati to Higgensport, Ripley, Georgetown, Portsmouth, and West Union. Shipments are made mainly to florists located in the aforementioned towns.

Witness Marshall Arrington stated that he was a parts manager for Moores Motor Sales, Dodge and Plymouth Agency, at Gallipolis, Ohio. The witness stated that his company received automobile parts from Columbus and Jackson, Ohio.

Upon cross-examination the witness said that his company had no outgoing shipments. The witness stated his company also used Commercial Motor Freight upon occasion.

Witness Stuart E. Price, a wholesale druggist located at Columbus, Ohio appeared and testified on behalf of the applicant. The witness stated that he was president of the Price Drug Company. The witness stated that his company had had occasion to use motor common carriers including the applicant. The witness stated that his company had customers in the south and southeast of Columbus through Portsmouth down to Gallipolis. The witness stated that his company required same-day delivery service. The witness stated upon cross-examination that his company had customers in Pomeroy, Gallipolis, Jackson and Chillicothe.

Upon further cross-examination the witness stated that his company shipped some commodities which were prohibited under the applicant's present tariff such as carbon diasulphide, acids, ether and vinethan.

Witness Carl W. Armstrong stated that he was employed by the automobile parts company located at Columbus, Ohio. His company engaged in the warehousing and distributing of automobile parts. Sales are made to other automobile parts wholesalers.

The witness stated that his company had occasion to transport automobile parts to Portsmouth and Waverly. The company also has customers at Jackson, and Gallipolis. His company has customers at Ripley, Georgetown and West Union. Customers are located at Piketon, Waverly, and West Union.

The witness stated that his company used Commercial Motor Freight for the transportation of larger shipments as well as Railway Express and Parcel Post. Bus service will be used between 10 and 15 times a month. The witness stated that his company required the proposed service and that, in his opinion, it was a necessity. Such bus transportation services have been used for at least 30 years.

Upon cross-examination the witness stated that in many instances his company's customers dictated that service was to be made by bus. The witness also stated that his company made on the average of one shipment a day to Gallipolis. One shipment a week would be made to Jackson, one every two weeks would be made to Ripley and Waverly.

Witness Robert Brennan, parts manager for the Rish Equipment Co., Columbus, Ohio stated that his company sold and serviced construction equipment. The applicant's service is used in the transportation of equipment parts and repair parts for this construction equipment.

The witness stated that his company would ship an average of between 5 to 12 shipments a day out of its Columbus plant. The witness stated that shipments would go to Gallipolis, Wellston, Jackson, Portsmouth, Lucasville and McArthur. The witness stated that his company was on a 24-hour call and that he personally made a shipment at 3 o'clock in the morning at the Columbus bus station. The witness stated that he felt that the services of Greyhound Corporation in the transportation of these parts was necessary.

Upon cross-examination the witness stated that the governing factor in deciding what carrier to use was the speed factor.

The witness also stated that his company made a regular delivery run to the bus company around 5 o'clock every evening. These shipments would be received probably that night by the consignees.

The witness stated on further cross-examination that his company had daily shipments to Portsmouth, Ohio, to the Portsmouth branch of his company. Shipments are made to Jackson, Ohio and Gallipolis on the average of 3 to 5 times a week.

Upon further cross-examination the witness stated that 95% of his company's customers required same day delivery.

Upon redirect examination the witness stated that his company had occasional shipments to Lucasville, Ohio. His company made shipments to Lucasville on the average of 3 to 5 times per week. The witness also stated that upon occasions it was necessary to make shipments on Saturdays and Sundays and that the applicant had furnished this service to his company.

Witness S. Harvey Reckling stated that he was a superintendent and employed by the Ternstedt Division of General Motor Corp. at Columbus, Ohio. He stated that his main concern was traffic and shipping problems of his company. The witness stated that his company was a manufacturer of automobile parts.

The witness stated that his company had occasion to use the applicant's proposed service. This service is used to such towns as Portsmouth, Gallipolis, and Ironton. The witness stated that the Greyhound service had been used mainly for inbound shipments coming from various part manufacturers in Ohio to his company's plant in Columbus.

Witness Edward Kaiser, a ticket agent for Atlantic Greyhound, appeared and testified on behalf of the applicant. The witness stated that to his knowledge his company had been offering the proposed service since 1935 and probably for many years prior to that.

Witness D. A. O'Dell, general sales and traffic manager of Atlantic Greyhound, appeared and testified on behalf of the applicant. The witness identified certain tariffs which had been filed by the applicant with this Commission providing for the transportation of express and baggage.

Upon cross-examination the witness stated that the appli-

cant's tariff contained a provision against transporting any packages weighing more than one hundred pounds. The witness also stated that his company had filed a pick-up and delivery service tariff with this Commission. This tariff is tied in with the express tariff. The witness stated that pick-up and delivery service was offered at Columbus, Portsmouth, and Cincinnati, Ohio.

SUMMARY OF THE EVIDENCE OF RESPONDENT:

Witness Russell Marvin Steinman, Division Supervisor of Railway Express Agency, appeared and testified on behalf of the protestant. The witness stated that he was familiar with the service rendered by his company in the involved territory. The witness identified and testified from Protestant's Exhibit ''A'' which was a map indicating the service presently offered by protestant. The witness testified as to the facilities maintained by his company in this area.

The witness stated that his company maintained facilities in the following cities: Cincinnati, Ripley, Portsmouth, Ironton, Waverly, Chillicothe, Columbus, Jackson, Gallipolis, Pomeroy, Marietta, and Bellaire. Middleport, Ohio is served by the Portsmouth agent. The witness stated that every point named was served daily and that some points were served more than once a day. The points served more than once a day are: Columbus, Cincinnati, Chillicothe, Portsmouth, Ironton, Marietta, Bellaire and Jackson.

The witness stated that in all cases the involved points were served by over-night service. The following points are given same-day service: Portsmouth and Jackson; Cincinnati and Chillicothe; Columbus and Gallipolis and Pomeroy.

The witness then testified from Exhibit ''B,'' which was a list of other motor carriers having common carrier authority in the involved area.

The witness testified from Exhibit ''C,'' which was a statement showing the number of shipments handled between the points involved for a one week period from January 15 to the 21st, 1958. The witness stated that his company transported the following classifications of traffic in its vehicles: wet fish, meats, corpse boxes, dog heads, general merchandise such as clothing, cans of cream, machine parts, automobile parts, ex-

plosives, money, C. O. D. shipments. The witness estimated that about 13% of these shipments could not be handled by Atlantic Greyhound because of the prohibition in the latter's tariff.

Upon cross-examination the witness stated that his company offered pick-up and delivery service within the corporate limits of the towns in which it operated.

The witness stated that he did not understand that the applicant was not seeking authority to transport traffic from Columbus to Cincinnati. The witness stated that he understood that the applicant was not seeking to transport traffic between Columbus and Chillicothe and between Columbus and Circleville. The witness estimated that 1% of his company's business was between Columbus and Waverly; 10% between Columbus and Portsmouth; 2% between Columbus and Jackson.

The witness stated that his company operated two daily trips between Cincinnati and Portsmouth. The protestant operates one daily trip between Cincinnati and Ripley. The Protestant operates one daily trip between Cincinnati and Middleport.

Issue:

Inasmuch as the applicant Atlantic Greyhound Corporation has filed an application to amend Certificate No. 1750 and has published notice of its application in The Columbus Citizen, a newspaper of general circulation in Franklin County, Ohio pursuant to the requisites of Section 4921.09, Revised Code, this application may be said to have been filed pursuant to the new or amended authority provisions of the aforementioned section.

In addition to the strict issue hereinabove set forth, there are additional ancillary issues presented by the unique factual situation presented in this case:

First, the applicant for many years has filed tariffs with this Commission providing for the transportation of not only passengers but also what is termed "express" and "Passenger's baggage." The applicant has operated under this tariff provision for a period estimated to be at least thirty years.

Second, this practice engaged in by this applicant is the general practice followed by many bus companies in the State of Ohio. An examination of bus certificates issued by this

Commission shows that of the 109 bus companies presently operated in Ohio there are 52 tariffs on file with this Commission which purport to give the carrier the authority to transport express matters. Certificate No. 54-R held by The Greyhound Corporation is the only motor bus certificate in Ohio that specifically gives the holder the right to transport express matters and passenger's baggage.

Third, no bus certificate, with the exception of Certificate 54-R, authorizes the holder thereof to transport passenger's baggage.

PROPOSAL CONTAINED IN THE PROTESTANT'S BRIEF:

The protestants supplied this Examiner with a brief which he requested at the termination of the hearing in the instant case. Following the brief the protestants forwarded a copy of restriction contained in Certificate CC-827 issued to The Greyhound Corporation by the Wisconsin Public Service Commission. Following is a copy of this restriction:

"* * *

"The transportation on busses over the above routes subject to duly approved tariffs of:

"1. Passengers and their baggage. (Subject to nine restrictions as to routes and points served.)

"2. Newspapers and cut flowers.

"3. Shipments, exclusive of explosives and dangerous articles and articles included in items (1) and (2), and *each limited to 40 pounds in weight, 24 inches in height, width or breadth and 45 inches in length* or in the alternative 72 inches in length by 24 inches in any other dimension, or in the case of single motor vehicle tires not exceeding 36 inches in outside diameter.

"4. Shipments, exclusive of explosives and dangerous articles and articles included under Items (1) and (2), each within the dimensional limits set forth in paragraph 3, and *in excess of 40 pounds but not over 100 pounds in weight, subject to a surcharge of $2.50 per shipment,* or such other amount as the Commission may specify, in addition to a charge produced by the applicable scale of rates.

"The authority described above in paragraphs (2), (3), and (4) is granted subject to the following conditions:

"A. That the transportation of property above authorized

in paragraphs (2), (3), and (4) shall be performed *only in passenger vehicles in scheduled passenger service.*

"B. Shipments may be originated or terminated at all points *where passengers are loaded or unloaded.*

"C. *No pick-up and delivery* service shall be performed.

"D. That said transportation of property shall be so conducted as not to impair the carrier's primary duty of providing adequate service for passengers and their baggage."

The protestant is especially fearful that sometime in the future this applicant might remove some of the seats in its passenger buses and utilize this additional space for the hauling of more express. The record indicates that this practice had been followed in one instance by Great Lakes Greyhound in the Detroit, Michigan area.

DISCUSSION:

Inasmuch as the instant case is filed under the new or amended authority section of the motor transportation section of the Ohio Revised Code, it is incumbent upon the applicant to show the existence of a present public convenience and necessity for the requested authority as well as establish that the existing motor transportation companies are not rendering reasonably adequate transportation service.

The instant case is protested by Railway Express Agency, Inc., which to the extent as set forth in Protestant's Exhibit "A" affords the general public an express-type common carrier service. This protestant does not so limit itself in its transportation as to size, weight, or commodity as does this applicant. The applicant, in fact, is competing with protestant Railway Express in the transportation of express freight; and, much of the testimony in the instant case concerned itself with which of these two carriers offered the public a more expeditious common carrier service. In all instances, both carriers are offering daily or overnight service to most of the communities in the involved area. Considerable testimony resolved around how many trips per day the applicant or protestant gave to a particular community.

The following public witnesses appeared and testified to existence of a present public convenience and necessity for the granting of the instant application: Arnold Kincaid; H. R.

Baker; Roy Dearing; H. Holthaus; George H. Kessen; Marshall Arrington; Stuart E. Price; Carl W. Armstrong; Robert Brennan and S. Harvey Reckling.

These witnesses were quite eloquent in their collective plea for a continuation of the present rapid transportation service afforded by this applicant. Most of their shipments were of an emergency nature in which the cost of transportation was incidental to the need for rapid delivery. The frequent schedule of passenger buses into the involved area is more suited to the delivery requirements of this type of property than any other available transportation service.

Practically all of this need on the part of the supporting public witnesses results from years of express service rendered by the applicant and upon which the public has come to rely. The denial of this application on the grounds of improper operations ultimately would result in penalizing the general public for the transgressions of the applicant. The practice of transporting express in passenger buses without authority from this Commission seems to be the generally accepted practice by the intrastate bus industry in Ohio. Under the unique circumstances of this case, your attorney examiner is of the opinion that the granting of this application as hereinafter set forth is in the interest of the general public and should be granted.

The Supreme Court of Ohio and this Commission has on numerous occasions held that the service afforded by certain motor carriers to be specialized and that existing motor transportation companies are not entitled to the so-called sixty day notice provided for in Section 4921.10, Revised Code. This principal was established in the following cases: *H & K Motor Transportation, Inc.* v. *PUCO*, 135 Ohio St., 145; *The Cleveland, Columbus & Cincinnati Highway, Inc.* v. *PUCO*, 144 Ohio St., 557; and *The Norwalk Truck Line Co. et al* v. *PUCO*, 148 Ohio St., 247.

In view of the fact that this applicant is offering to render this same type of specialized service now afforded by protestant Railway Express Agency, Inc., this attorney examiner is of the opinion that other motor transportation companies possessing certificated authority from this Commission are not entitled to the aforementioned sixty day order.

The question remaining is to what points and to what extent should the applicant be issued certificated authority from this Commission.

First, the applicant has established a need for express common carrier service by motor bus over the proposed route.

Second, the applicant has not established a public need for pick-up and delivery service at any of the cities located along its routes in Ohio and for that reason no authority should be granted by this Commission. The testimony in this record is clear that when this applicant's express service is desired, the shipper delivers the express article at the carrier's bus terminal and the shipment is then dropped off at a bus stop located nearest to the consignee.

Third, in view of the failure of the applicant to establish a need for the transportation of express traffic between the points of Columbus or Cincinnati, any authority granted by this Commission pursuant to this application should contain a restriction against offering express service to these two points.

Fourth, the protestant Railway Express Agency, Inc., as shown by protestant's Exhibit "A" serves some of the points requested in the instant application by way of rail service. Insofar as these points are concerned and in view of the expeditious nature of the express items to be transported, such rail service is not adequate to meet the shipping needs of the public at these points.

Fifth, the protestant Railway Express Agency, Inc., as shown by Protestant's Exhibit "A" does not offer any transportation service to some of the points requested by this applicant. To this extent the application should be granted.

Sixth, the records of this Commission fail to indicate that protestant Railway Express Agency, Inc. has any certificated motor carrier authority between Ripley and Aberdeen, Ohio. Under these circumstances and to this extent there is no valid protest to the granting of the application insofar as this proposed service is concerned.

Seventh, that only Portsmouth, Jackson, Gallipolis, and Pomeroy, Ohio are served by protestant Railway Express Agency, Inc. by way of certificated regular route motor carrier authority from this Commission.

Therefore, this attorney examiner is of the opinion that

the application should be granted as hereinafter set forth and that in view of the highly specialized and limited nature of the recommended authority that there is no need for the issuance of the so-called sixty day order.

From the testimony submitted, it is your attorney examiner's opinion that the applicant should be granted the authority to transport the following property:

(1) Passengers' baggage.

(2) Shipments, not to exceed one hundred pounds, having dimensions of 24 inches in width and breadth and 45 inches in length or in the alternative 72 inches in length by 24 inches in any other dimension or in the case of single motor vehicle tires not exceed 36 inches in outside diameter.

That the aforementioned authority should contain the following restrictions:

(1) Against the transportation of explosives and/or other dangerous articles.

(2) That said transportation of property should be performed only in passenger vehicles in scheduled passenger service.

(3) Shipments may be originated or terminated only at all points where passengers are loaded or unloaded.

(4) No pick-up and delivery service shall be performed.

(5) Restricted against transporting property whose entire movement is between Columbus and Cincinnati or reverse.

(6) That said transportation of property shall be so conducted as not to impair the carrier's primary duty of providing adequate service for passengers and their baggage.

FINDINGS:

From an examination of the testimony and exhibits submitted herein it is your attorney examiner's finding that:

(1) Application, exhibits, and publication are in compliance with the appropriate statutes;

(2) This Commission has jurisdiction to hear and determine the issues presented herein;

(3) A present public convenience and necessity exists for the granting of the application insofar as hereinabove set forth;

(4) The service offered by protestant Railway Express Agency, Inc. and all motor carriers is not reasonably adequate to meet the needs of the general public in the involved area;

(5) Protestant Railway Express Agency, Inc. has regular route motor carrier authority to serve only the following points involved in this application: Portsmouth, Jackson, Gallipolis, and Pomeroy, Ohio; and

(6) In view of highly specialized and limited authority recommended above, there is no need for the issuance of the statutory sixty-day order insofar as the cities mentioned in finding (5) are concerned.

RECOMMENDATION:

It is the recommendation of your attorney examiner that the application be granted to the extent set forth in the discussion paragraph above.

Respectfully submitted,
Lewis S. Witherspoon
Attorney Examiner

LSW:em
Dated—May 8, 1958
CC: Appearances.